USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   12/05/2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                    :

ELSEVIER, INC.,                    :

                                  :

                     Plaintiff,   :        12 Civ. 5121 (KPF)

         v.               :

                                    :       OPINION AND ORDER

PIERRE GROSSMAN, *et al.*,    :

                                  :

                    Defendants.  :

                                  :

-------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

       On June 29, 2012, Plaintiff Elsevier, Inc. ("Plaintiff" or "Elsevier") initiated the instant action, alleging claims under 18 U.S.C. § 1962 and New York State law stemming from an alleged magazine subscription fraud perpetrated by Defendants Pierre Grossman ("Grossman"), IBIS Corp. ("IBIS"), Publicacoes Tecnicas Internacionais ("PTI"), and various "John Doe" Defendants (collectively, "Defendants"). Defendants Grossman, IBIS, and PTI acknowledged service on October 29, 2012, but failed to file an answer. Plaintiff obtained entries of default against Defendants Grossman, IBIS, and PTI, and now moves for default judgment against those Defendants. Defendants have cross-moved to vacate the entries of default. For the reasons discussed in the remainder of this Opinion, Defendants' motion is granted, Plaintiff's motion is denied, and Plaintiff is granted leave to replead.

## BACKGROUND

### A.    Factual Background[1]

Plaintiff Elsevier is a Delaware corporation with a principal place of business in New York.  (Compl. ¶ 6).  Elsevier publishes scholarly books and journals related to natural and social sciences.  (*Id.*).  Defendant PTI is a corporation organized under the laws of Brazil, with a principal place of business in Brazil, and an office in Garden City, New York.  (*Id.* ¶ 7). Defendant IBIS is a corporation organized under the laws of Brazil, with a principal place of business in Brazil, and an office in Garden City, New York. (*Id.* ¶ 8).  Defendant Grossman is a citizen and resident of Brazil, and the Chief Executive Officer of PTI and IBIS.  (*Id.* ¶ 9).  Plaintiff also brought claims against John Doe Nos. 1-50, who are described, in part, as relatives and/or business associates of PTI, IBIS, or Grossman.  (*Id.* ¶ 10).

### 1.    Elsevier's Business Model

Elsevier publishes journals consisting primarily of peer-reviewed articles, which are written by scholars and often based upon original research.  (Compl. ¶ 11).  Elsevier is the sole source for new copies of its journals.  (*Id.* ¶ 14). Elsevier incurs substantial costs in copyediting, proofreading, typesetting, printing, binding, distributing, and marketing the journals, and in maintaining its editorial offices.  (*Id.* ¶ 12).

Elsevier sells its journals through annual subscriptions.  (Compl. ¶ 13). Elsevier charges two different subscription rates: a full-price rate for

---

[1]    The following facts are taken from the Complaint ("Compl."), and are assumed true for the purposes of this Opinion.

2

institutions, and a discounted rate for individuals.  (*Id.*).  Elsevier does not

permit individuals who purchase journals at the individual rate to then supply

them to unidentified institutions for institutional use.  (*Id.* ¶ 15).  To that end,

orders placed at the individual rate are governed by contracts that prohibit the

individual from ordering on behalf of another undisclosed party or to fulfill an

order for an institution.  (*Id.*).[2]

Elsevier sells subscriptions directly or through subscription agents.

(Compl. ¶ 16).  Subscription agents serve as intermediaries between individuals

or institutions and Elsevier.  (*Id.*).  Elsevier relies upon the subscription agents

to identify truthfully the type of submission they need, based on the customer's

status as an individual or an institution.  (*Id.*).  Elsevier also provides its

subscription agents with terms and conditions that require the agent to identify

the end user of each journal.  (*Id.* ¶ 17).

Elsevier relies upon the income from the institutional subscriptions to

make its journals economically feasible.  (Compl. ¶ 13).  As such, Elsevier

suffers financial injury if it receives payment for institutional subscriptions at

individual rates.  (*Id.* ¶ 18).  A significant decline in income from its journals

could cause Elsevier to stop publishing one or more journals, or publish less

---

[2]     Elsevier's purchase order and invoice forms generally state:

> Customer/Client represents and warrants that it is purchasing Products
> and Services from Elsevier for its own account and use (or if the Client is
> an agent, for the account and use of no more than one principal) and not
> on behalf of any other person or entity except as may be expressly set
> forth otherwise in the Terms and Conditions.

(Compl. ¶ 15).

information in those journals.  (*Id.*).  Elsevier asserts that such consequences could adversely impact scholarship and scientific progress.  (*Id.*).

Elsevier maintains records of each individual and institutional customer in order to provide customer support, pay royalties, and enhance its products for certain markets.  (Compl. ¶ 14).  According to Elsevier, the loss of customer information irreparably harms Elsevier.  (*Id.*).

### 2.    Defendants' Alleged Subscription Fraud

Elsevier alleges that Defendants engaged in a fraud by conspiring to purchase individual subscriptions from Elsevier at discounted rates and then resell those subscriptions to institutions at the higher rate, thereby reaping substantial illegal profits while depriving Elsevier of revenue and customer information.  (Compl. ¶ 20).  Specifically, Elsevier alleges that Grossman conspired with a group of coconspirators, identified in the Complaint as John Doe Nos. 1-50, who are relatives and/or business associates of Defendants PTI, IBIS, or Grossman (the "Subscribing Defendants").  (*Id.* ¶¶ 10, 21).  The Subscribing Defendants, who are from various states, subscribed to certain journals published by Elsevier at individual rates between 2003 and 2011.  (*Id.* ¶ 22).  The Subscribing Defendants obtained the journals through the mail and interstate wires, and caused PTI and IBIS to resell them to institutions at substantially higher rates.  (*Id.*).  Grossman also resold the individual-rate journals to institutions at the institutional rate.  (*Id.* ¶ 23).

According to the Complaint, the Subscribing Defendants and Grossman placed orders for individual subscriptions using false names and/or addresses.

(Compl. ¶ 24).  The Subscribing Defendants and Grossman then sent journals to several common addresses, including addresses in Garden City, New York, and São Paolo, Brazil.  (*Id.* ¶ 25).  Each of the Defendants shared in the profit from this scheme.  (*Id.* ¶ 26).

## B.    The Instant Action

Plaintiff filed the instant action on June 29, 2012.  (Dkt. #1).  On October 29, 2012, Defendants Grossman, IBIS, and PTI, through their counsel, executed a waiver of service stating that their answer was to be due on November 19, 2012.  (Dkt. #5).[3]  Defendants did not file an answer.  On March 15, 2013, Plaintiff filed the acknowledgment of service (Dkt. #5) and requested that the Clerk of Court enter a default as to each Defendant (Dkt. #6, 7).  The Clerk of Court entered a default as to Defendants Grossman, IBIS, and PTI on June 7, 2013 (Dkt. #8, 9, 10), and on June 24, 2013, this case was reassigned to the undersigned (Dkt. #11).

---

[3]    Defendants' counsel subsequently represented to Plaintiff's counsel that Defendants would file an answer by December 7, 2012.  (Pl. Reply 4).  In their opposition brief, Defendants imply that the parties had some sort of agreement pursuant to which Plaintiff would refrain from filing the acknowledgement of service for some time, as if this would, in essence, toll the time in which to file an answer.  (*See* Def. Opp. 3-4).  The existence of such an agreement was vigorously disputed by Plaintiff at the August 30, 2013 conference.  In any event, the Court was unaware of this "agreement," and even if it had existed, the parties were obligated to follow Court-imposed deadlines, which remained in place absent a request from either party to adjourn them.  Moreover, Defendants' counsel admitted that he was under specific instructions from his client not to file an answer or otherwise defend the case.  *See* Discussion, Section B(1), *infra.*

Because both parties devote considerable briefing to certain events involving the parties in Brazil, the Court is constrained to note that such events are irrelevant for the purposes of this motion and this action.  The deadlines in the instant action were not tolled by the Brazilian action, of which this Court had no knowledge until recently.  Nor was Defendant Grossman free to ignore this Court's deadlines in the hopes that the matter would go away, irrespective of any belief he may have had that this action was a "side show" to events in Brazil.  (Aug. 30 Conference Transcript ("Aug. 30 Tr.") 8).  Whatever was or is happening in Brazil between the parties, and whatever purpose this lawsuit might serve in that other action, simply does not matter here.

On June 30, 2013, Plaintiff filed an application for default judgment. (Dkt. #12, 14, 15). The Court issued an Order to Show Cause on July 30, 2013, requiring Defendants Grossman, IBIS, and PTI to show cause on August 30, 2013, as to why a default judgment should not be entered against them. (Dkt. #12). Defendants' counsel filed a response to the Order to Show Cause on August 23, 2013 (Dkt. #19, 20, 21), and appeared in this case for the first time on August 29, 2013 (Dkt. #23). Plaintiff filed a reply on August 30, 2013. (Dkt. #24, 25, 26).

At the show cause hearing held on August 30, 2013, the Court heard extensive argument from both parties regarding the entry of default judgment. Upon learning that the parties were amenable to settlement, the Court postponed its consideration of Plaintiff's motion for three weeks to allow the parties to engage in settlement discussions. (Aug. 30 Tr. 15-17). On September 18, 2013, the parties requested an extension of the time in which to engage in settlement discussions, which the Court extended to October 4, 2013. (Dkt. #27). On October 4, 2013, the parties notified the Court that they were unable to reach a settlement the case, and asked the Court to consider Plaintiff's pending motion. (Dkt. #28).

## DISCUSSION

### A.    Applicable Law

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that fact is made to appear by affidavit or

otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a).

When a party defaults, they are generally deemed to admit all well-pleaded

claims, except for those dealing with damages. *Transatlantic Marine Claims*

*Agency, Inc.* v. *Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997) (holding

that "[i]t is, of course, ancient learning that a default judgment deems all the

well-pleaded allegations in the pleadings to be admitted" (citation omitted)).

However, a plaintiff is not entitled to a default judgment as a matter of right

simply because a party has defaulted. *See Erwin DeMarino Trucking Co.* v.

*Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must

"supervise default judgments with extreme care to avoid miscarriages of

justice"). To the contrary, because there is a "preference for resolving disputes

on the merits," any doubts "should be resolved in favor of the defaulting party."

*Powerserve Int'l, Inc.* v. *Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (citing *Enron Oil*

*Corp.* v. *Diakuhara*, 10 F.3d 90, 95, 96 (2d Cir. 1993)).

> The Second Circuit has made clear that
>
> It is an "ancient common law axiom" that a defendant who defaults thereby admits all "well-pleaded" factual allegations contained in the complaint. [*Vermont Teddy Bear Co.* v. *1–800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)]. However, it is also true that a district court "need not agree that the alleged facts constitute a valid cause of action." [*Au Bon Pain Corp.* v. *Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)]. Indeed, we have recently suggested that, prior to entering default judgment, a district court is "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." [*Finkel* v. *Romanowicz*, 577 F.3d 79, 81 (2d Cir. 2009)].

*City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).

In other words, a default "only establishes a defendant's liability if those

allegations are sufficient to state a cause of action against the defendant."
*Taizhou Zhongneng Imp. & Exp. Co.* v. *Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (summary order).

Relatedly, while courts may find that factual allegations are not well-pled only in "very narrow, exceptional circumstances," they are not similarly bound when analyzing the *sufficiency* of Plaintiff's allegations.  *Compare Trans World Airlines, Inc.* v. *Hughes*, 308 F. Supp. 679, 683 (S.D.N.Y. 1969) ("[o]nly 'in very narrow, exceptional circumstances' may a court find a factual allegation not 'well pleaded'"), *modified on other grounds*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973), *with In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (E.D.N.Y. 1989) ("[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law" (citation omitted)); *see also Gerritsen* v. *Glob Trading, Inc.*, No. 06 Civ. 3756 (SLT) (RLM), 2009 WL 262057 (E.D.N.Y. Feb. 4, 2009) (finding that a default judgment should not be entered on claims that were not well-pled); *Am. Centennial Ins. Co.* v. *Seguros La Republica, S.A.*, No. 91 Civ. 1235 (MJL), 1996 WL 304436 (S.D.N.Y. June 5, 1996) (finding that "there must be a sufficient basis in the pleadings for the judgment entered" (citation omitted)).

## B.   Application

### 1.   The Entries of Default Will Be Set Aside

Defendants have moved to set aside the Clerk's entries of default.  A court may set aside an entry of default for "good cause."  Fed. R. Civ. P. 55(c).

"Three factors determine good cause: (1) whether the default was willful; (2) whether the adversary has presented a meritorious defense; and (3) whether setting the default aside would prejudice the adversary." *Loop Prod.* v. *Capital Connections LLC*, 797 F. Supp. 2d 338, 345-46 (S.D.N.Y. 2011) (citing *Commercial Bank of Kuwait* v. *Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994)).

### i.    The Default Was Willful

Turning to the first factor, Defendants argue that their conduct in defaulting was not egregious, and that their counsel acted promptly to set aside the entry of default upon learning of it. (Def. Opp. 6). "[W]illfulness requires something more than mere negligence, such as egregious or deliberate conduct, although the degree of negligence in precipitating a default is a relevant factor to be considered." *Odfjell Seachem A/S* v. *Cont'l De Petrols Et Invs. SA*, 613 F. Supp. 2d 497, 500 (S.D.N.Y. 2009) (citations and internal quotation marks omitted).

At the August 30, 2013 conference, Defendants' counsel represented to the Court that he had been instructed by his clients not to file an answer, or otherwise defend the case. (Aug. 30 Tr. 8-9). Specifically, counsel stated that

> [m]y client was not in any particular hurry to move this case along, feeling that it's a side show to disputes between the parties in Brazil … [s]o my client's instructions were to wait and see and not pursue the matter … [a]nd all I could say, your Honor, is I'm not going to claim to the Court I thought it was OK, [but] I was instructed by my client not to move forward, so I didn't.

(Aug. 30 Tr. 8-9). In light of these admissions, Defendants' default cannot be said to be anything but knowing and willful, and is in fact egregious. Similarly, defense counsel's current assertion of promptness is undermined by the fact

9

that he was retained at least as early as October 2012, yet failed to enter an appearance for nearly a year, and failed to monitor the docket to determine whether an entry of default had been made.[4]  Defendants deliberately chose not to defend this action, and as such, their default was knowing and willful.

### ii.    Defendants Have Raised Meritorious Defenses

The second factor is whether Defendants have raised a meritorious defense that would constitute a complete defense at trial.  *SEC* v. *McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (holding that "[i]n order to make a sufficient showing of a meritorious defense ... the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." (citations omitted)).  Defendants raise a number of arguments, at least one of which would seem to constitute a complete defense to the federal claims at issue.

Defendants first argue that Grossman and PTI are not subject to the personal jurisdiction of the Court, because neither does business in the State of New York.  (Def. Br. 6-7).  Defendants do not dispute that IBIS is subject to the Court's jurisdiction, or that Grossman owns property in New York State and is subject to jurisdiction here.  (Pl. Reply 6).  Thus, their jurisdictional argument would not constitute a complete defense.  Defendants' argument that Plaintiff's claims for fraudulent misrepresentation and breach of contract cannot lie because they arise out of the same set of facts has merit, but would not constitute a complete defense, as it only addresses two of Plaintiff's state

---

[4]    Plaintiff first filed an application for default in March 2013, a full five months before Defendants "first learned" of the default.  (Dkt. #6, 7).

law claims.  (Def. Opp. 7).  Defendants' argument that Plaintiff's RICO claims are time-barred is correct, but only as to some of the subscriptions at issue (*see* Discussion Sec. B(3)(i), *infra*), and thus would similarly not constitute a complete defense.

Defendants lastly argue that Plaintiff has failed to assert its allegations of fraud with sufficient particularity under Fed. R. Civ. P. 9(b).  (Def. Opp. 7).  As discussed in Discussion Section B(3)(ii)(b), *infra*, the Court agrees.  Because a deficiency in pleading of this type would dispose of the federal claims at issue, leaving the Court with discretion to exercise (or not exercise) pendent jurisdiction over Plaintiff's state-law claims, this counsels in favor of allowing the Defendants to respond to the case on the merits.

### iii.    Plaintiff Has Not Demonstrated Prejudice

The third and final factor is the extent to which Plaintiff would be prejudiced by setting aside the entry of default.  "[D]elay [in obtaining a judgment] is not a sufficient basis for establishing prejudice."  *Davis* v. *Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (citation omitted).  "Rather, it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'"  *Id.* (quoting 10 Charles Alan Wright, *et al.*, FEDERAL PRACTICE & PROCEDURE § 2699 (1983) (hereinafter, "Wright")).  However, "[a]n absence of prejudice to the nondefaulting party would not in itself entitle the defaulting party to relief from the judgment [because] '[c]ourts have an interest in expediting litigation, [and] abuses of process may be prevented by enforcing those defaults that arise from

egregious or deliberate conduct.'" *McNulty*, 137 F.3d at 738 (quoting *Am. Alliance Ins. Co.* v. *Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)) (third alteration in original).[5]

Defendants argue that because Elsevier received a Consent Order to protect any assets in New York, Plaintiff could not have detrimentally relied on the entry of default. (Def. Opp. 6). In direct contradiction of this argument, Defendants' counsel admitted at the August 30, 2013 conference that Defendants never actually provided a Consent Order to Elsevier. (Aug. 30 Tr. 7).[6]

The fact remains, however, that Plaintiff has failed to allege that lifting the entry of default would "'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Davis*, 713 F.2d at 916 (quoting Wright, § 2699). Plaintiff points to a separate default judgment entry against Grossman, and proffers that Elsevier may be prejudiced in retrieving Defendants' assets by any delay. (Pl. Reply 9). The fact that Elsevier's potential recovery in Grossman's alleged New York assets may be delayed, or subordinated to that of another creditor is not sufficient to demonstrate legally cognizable prejudice, as is required. *See Davis*, 713 F.2d at 916; *see also Schlatter* v. *China Precision Steel, Inc.*, No. 13 Civ. 2793 (GWG),

---

[5]   To be sure, where, as here, "a defendant's default was willful and the defendant has no meritorious defense, an absence of prejudice to the plaintiff will not entitle the defendant to relief from a default judgment." *RLS Associates, LLC.* v. *United Bank of Kuwait PLC*, No. 01 Civ. 1290 (CSH), 2002 WL 122927, at *3 (S.D.N.Y. Jan. 29, 2002) (citing *McNulty*, 137 F.3d at 738). That is not this case, however, and the Court cannot overlook the pleading deficiencies identified in this Opinion.

[6]   The Court remains troubled by Defendants' decision to advance, and then persist with, so specious an argument.

2013 WL 5353708, at *4 (S.D.N.Y. Sept. 25, 2013) (no prejudice found where discovery had not yet begun); *Mathon* v. *Marine Midland Bank, N.A.*, 875 F. Supp. 986, 993 (E.D.N.Y. 1995) (no prejudice found where some defendants had only recently accepted service and discovery had not yet begun).  As such, the entries of default will be set aside, and Defendants' motion is granted.

### 2. Plaintiff Is Entitled to Attorney's Fees and Costs Incurred in Connection with This Motion

District courts have the inherent power to impose reasonable conditions on the vacatur of an entry of default in order to avoid undue prejudice to the nondefaulting party.  *See Powerserve*, 239 F.3d at 515 (affirming district court's requirement that defendants post bond equal to amount at issue in exchange for vacatur of default).  And "[t]he condition most commonly imposed is that the defendant reimburse the plaintiff for costs — typically court costs and attorney's fees — incurred because of the default."  *Thorpe* v. *Thorpe*, 364 F.2d 692, 694 (D.C. Cir. 1966); *see also Coon* v. *Grenier*, 867 F.2d 73, 79 (1st Cir. 1989) (requiring defendant to pay reasonable fees and costs incurred by plaintiff in securing the entry of default as a condition of vacatur) (cited in *Brien* v. *Kullman Indus., Inc.*, 71 F.3d 1073, 1078 (2d Cir. 1995)); *Oliner* v. *McBride's Indus., Inc.*, 102 F.R.D. 561, 564 (S.D.N.Y. 1984) (vacating entry of default, but requiring defendant to pay costs incurred in the service of notice regarding the default judgment proceedings).

Because Defendants' default was willful — indeed, egregious — it is appropriate to award costs to Plaintiff for the expense it incurred in bringing this motion.  On August 21, 2013, Plaintiff submitted, for *in camera* review, a

detailed accounting of the attorney's fees and costs incurred to date.  As of that date, $10,673 of those costs was traceable to the instant motion.  The Court finds that a sum of $5,000 would be reasonable to compensate Plaintiff for the fees and costs incurred in connection with securing the entries of default and bringing this motion.  Thus, Plaintiff is awarded attorneys fees and costs in the amount of $5,000.

### 3.   Several of Plaintiff's Claims Are Inadequately Pled

#### i.   Plaintiff Has Failed to Allege the Timeliness of Its Civil RICO Claims

A review of Plaintiff's claims reveals several defects in pleading, particularly as to the civil RICO claims upon which the Court's jurisdiction is premised.  As an initial matter, it is worth noting that Plaintiff has failed to allege facts sufficient to demonstrate the timeliness of any of its civil RICO claims.  The Supreme Court announced a uniform four-year limitations period for civil RICO actions in *Agency Holding Corp.* v. *Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156–57 (1987), but expressly declined to decide the question of when such civil RICO actions accrue.  The Second Circuit has held that each RICO cause of action accrues when the plaintiff discovers, or should have discovered, the injury he suffered from the violation; this is also known as the "separate accrual" rule.  *Bankers Trust Co.* v. *Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988).

Expounding upon this principle, the Second Circuit later held that

A necessary corollary of the separate accrual rule is that a plaintiff may only recover for injuries discovered or discoverable within four years of the time suit is brought.  As long as separate and

14

independent injuries continue to flow from the underlying RICO violations — regardless of when those violations occurred — a plaintiff may wait indefinitely to sue, but may then win compensation only for injuries discovered or discoverable within the four-year 'window' before suit was filed, together, of course, with any provable future damages.

*Bingham* v. *Zolt*, 66 F.3d 553, 559-60 (2d Cir. 1995) ((internal citations omitted) citing *Bankers Trust*, 859 F.2d at 1103, 1104-05).

Plaintiff brought this action in 2012, but failed to allege when it first discovered the subscription fraud. The subscriptions at issue, which Plaintiff alleged were traceable to the conspiracy, were purchased between 2003 and 2011. (Compl. ¶ 37). Plaintiff has not alleged the timeliness of any of its civil RICO claims, and has thus only properly alleged claims within the four-year "window" before the suit was filed. A contrary decision — allowing a plaintiff to allege claims for nine years' worth of violations simply because that plaintiff omitted reference to the timeliness of its claims — would contravene Supreme Court and Second Circuit precedent.

Regardless of when Plaintiff discovered its claims, Plaintiff may only be *compensated* for injuries discovered or discoverable within the four-year "window" before suit was filed, i.e., after June 2008. *See Bingham*, 66 F.3d at 559-60. There is an additional wrinkle here: Plaintiff alleges in the Complaint that one journal was purchased in 2008, but does not specify the date of purchase. (Compl. p. 8). As Plaintiff has failed to allege whether that claim is timely, it is not entitled to recover compensation for it. Thus, even assuming the Complaint sufficiently alleges its civil RICO claims (a concept addressed in

15

the next section), Plaintiff is only entitled to damages related to the magazine subscriptions purchased between July 2009 and 2011.

### ii. Plaintiff Has Failed to Plead Properly Its Civil RICO Claims

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  A plaintiff bringing a civil RICO claim under Section 1962(c) must allege (i) that the defendant has violated the substantive RICO statute; and (ii) that the plaintiff was injured in his business or property "*by reason of* a violation of section 1962."  *Moss* v. *Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (emphasis in original (citing 18 U.S.C. § 1962(c))); *accord Spool* v. *World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).

To make out a substantive RICO violation, a plaintiff must allege the (i) conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity. *Sedima, S.P.R.L.* v. *Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  Such a showing entitles the plaintiff to trebled damages plus costs, including attorney's fees. 18 U.S.C. § 1964(c); *see also Maersk, Inc.* v. *Neewra, Inc.*, 687 F. Supp. 2d 300, 330 (S.D.N.Y.  2009), *aff'd sub nom. Maersk, Inc.* v. *Sahni*, 450 F. App'x 3 (2d Cir. 2011) (summary order).

16

For the reasons discussed below, Plaintiff has adequately alleged some, but not all, of the elements of a civil RICO violation, and as such, has not properly alleged that claim.

### a.    Plaintiff Has Alleged an Enterprise

An "enterprise" within the meaning of the RICO statute includes any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  An enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States* v. *Turkette*, 452 U.S. 576, 583 (1981).  An association in fact enterprise must have a structure exhibiting the following three features: (i) a purpose; (ii) relationships among the individuals associated with the enterprise; and (iii) longevity sufficient to permit the associates to pursue the purpose of the enterprise.  *Boyle* v. *United States*, 556 U.S. 938 (2009); *see generally United States* v. *Applins*, 637 F.3d 59, 73 (2d Cir. 2011).

Plaintiff alleges that there was an enterprise in fact between and among Grossman, IBIS, PTI, and the John Doe Defendants "for the purpose of securing journal subscriptions at individual rates and reselling them to institutions at higher rates." (Compl. ¶¶ 28-29).  Grossman is identified as the leader of this enterprise, and a number of the Defendants are alleged to share "familial or business relationships." (*Id.* ¶¶ 21, 31, 43).  Grossman and the Subscribing Defendants used false names, common addresses, and common e-

mail addresses in their subscriptions, and are alleged to have arranged for the delivery of the journals (in either an electronic or a hard-copy form) to Grossman, IBIS, and PTI, where they were then resold by Grossman, on his own or through PTI or IBIS.  (*Id.* ¶¶ 32-35, 37-39).[7]  Finally, the association in fact and the subscription fraud scheme are alleged to have existed over the period from 2003 to 2012.  (*Id.* ¶ 37).  In short, Plaintiff has adequately alleged an enterprise.

### b. Plaintiff Has Failed to Allege a Pattern of Racketeering Activity

A "pattern" requires at least two acts of "racketeering activity" occurring within 10 years of each other.  *See* 18 U.S.C. § 1961(5).  The term "racketeering activity" refers to the predicate acts necessary to sustain a RICO claim and includes mail fraud and wire fraud.  *See* 18 U.S.C. § 1961(1).  In order to constitute a "pattern" of racketeering activity, the predicate acts must be related and constitute a threat of continued racketeering activity."  *H.J. Inc., et al.* v. *Northwestern Bell Tel. Co.*, 492 U.S. 229, 238-44 (1989); *see also United States* v. *Alkins*, 925 F.2d 541, 551 (2d Cir. 1991) (same).

Plaintiff alleges that Defendants committed mail and wire fraud in the course of their alleged conspiracy.  The elements of mail and wire fraud are (i) the use of interstate mail or wires in furtherance of (ii) a scheme to defraud

---

[7]   In *Elsevier Inc.* v. *W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 306 (S.D.N.Y. 2010) — which involved the same Plaintiff and similar, though not identical, facts as the instant case — Judge McMahon granted the defendants' motion to dismiss, holding that the plaintiff in that case had failed to allege that there was a relationship between and among the defendants sufficient to constitute an association in fact.  By contrast, Plaintiff here has pled relationships between and among the Defendants, namely, familial and business relationships.

(iii) with money or property as the object.  *Maersk*, 687 F. Supp. 2d at 332

(citing *United States* v. *Autuori*, 212 F.3d 105, 115 (2d Cir. 2000)).  To prove

that the use of the mail or wires was "in furtherance of" the fraudulent scheme,

a plaintiff must show that (i) the defendant "caused" the mailing or use of the

wires — that is, "acted 'with knowledge that use of the mails [or wires] will

follow in the ordinary course of business, or ... can reasonably be foreseen,

even though not actually intended,'" and (ii) the mailing or use of the wires

"was for the purpose of executing the scheme or, in other words, 'incident to an

essential part of the scheme.'"  *United States* v. *Bortnovsky*, 879 F.2d 30, 36 (2d

Cir. 1989) (quoting *Pereira* v. *United States*, 347 U.S. 1, 8-9 (1954)); *see also In*

*re Sumitomo Copper Litig.*, 995 F. Supp. 451, 455 (S.D.N.Y. 1998).

   Mail fraud and wire fraud allegations are also subject to enhanced

pleading requirements.  Rule 9(b) of the Federal Rules of Civil Procedure, which

applies to RICO claims involving fraud, provides that "[i]n alleging fraud or

mistake, a party must state with particularity the circumstances constituting

fraud or mistake."  Fed. R. Civ. P. 9(b); *see also Lundy* v. *Catholic Health*

*System of Long Island Inc.*, 711 F.3d 106, 119-20 (2d Cir. 2013).  Thus,

allegations of mail and wire fraud must state the "content, time, place, and

speaker of each alleged mailing or wire transmission."  *Bologna* v. *Allstate Ins.*

*Co.*, 138 F. Supp. 2d 310, 321 (E.D.N.Y. 2001) (citing *Ouaknine* v. *MacFarlane*,

897 F.2d 75, 79 (2d Cir. 1990)); *see also Cosmas* v. *Hassett*, 886 F.2d 8, 11 (2d

Cir. 1989) (finding that the "complaint must adequately specify the statements

it claims were false or misleading, give particulars as to the respect in which

plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements"), *cited in Lundy*, 711 F.3d at 119.  In addition, a plaintiff "must identify the purpose of the mailing within the defendant's fraudulent scheme."  *McLaughlin* v. *Anderson*, 962 F.2d 187, 191 (2d Cir. 1992) (citing *Sun Savings & Loan Ass'n* v. *Dierdoff*, 825 F.2d 187, 196 (9th Cir. 1987) (holding that mail fraud was adequately pled where the complaint described a letter's date, content, origin, destination, and role in fraudulent scheme)).

Plaintiff alleges the following in support of its assertion that the Defendants' activity constituted a "pattern" of racketeering activity:

- Defendants used false names and addresses to purchase Elsevier's journals at individual rates and resell them to institutions at higher rates, "specifically intending to defraud Elsevier for the purpose of furthering the illegal activities of the Enterprise." (Compl. ¶¶ 37-40).

- Defendants "intended that Elsevier would use the United States mail to ship each issue of each journal which defendants had fraudulently ordered as an individual subscription[, and] Elsevier did, in fact, use the United States mail in the manner that defendants intended." (*Id.* ¶ 41).

- Defendants also "secured electronic ([I]nternet) access to the journals, which they provided to Pierre Grossman, IBIS, and/or PTI." (*Id.* ¶ 34).

- "Pierre Grossman fraudulently secured individual subscriptions, as set forth [in the chart], through the use of the mails and/or wires.  Each such instance of mail fraud or wire fraud constitutes a predicate act of 'racketeering activity.'" (*Id.* ¶ 39).

- In the Complaint, Plaintiff provided a chart of eight journal subscriptions purchased by Pierre Grossman. The chart, however, includes only the name of the

journal, the subscription year (not the subscription purchase date), and the quantity ordered.  (*Id.* p. 8).[8]

- Finally, Plaintiff alleged that "[u]pon information and belief, Pierre Grossman and the other Subscribing Defendants, using real or fictitious names, secured individual subscriptions, including without limitation those identified in the foregoing paragraphs, intending to resell them to institutions at higher rates."  (*Id.* ¶ 40).

Plaintiff has failed to plead its allegations of mail and wire fraud with sufficient particularity under Rule 9(b).  Under that rule, Plaintiff must identify the "content, time, place, and speaker of *each* alleged mailing or wire transmission."  *Bologna*, 138 F. Supp. 2d at 321 (emphasis added) (citing *Ouaknine*, 897 F.2d at 79).  The Court assumes, resolving ambiguities in favor of Plaintiff, that each subscription contained a false statement, namely, that the subscriber did not intend to resell the subscription to an institution.  Even so, Plaintiff has failed to identify any fraudulent statements made by the Subscribing Defendants, PTI, or IBIS.  Plaintiff has at most alleged eight fraudulent statements by Pierre Grossman, but has failed to allege the timeliness of seven of them (*see* Discussion Sec. B(3)(i), *supra*).  No matter how fraudulent it may have been, Grossman's 2011 subscription to the Archives of

---

[8]   The detailed spreadsheet Plaintiff attached in support of its Motion for Default Judgment, presumably for the purpose of identifying its damages, would have been more helpful had it been attached to the Complaint.  The spreadsheet identifies the purchaser of each subscription at issue (50 in total), the address and e-mail address used to secure the subscription, the name of the journal, and the difference in price between the individual and institutional subscription rates.  (*See* Guman Decl. in Support of Plaintiff's Motion for Default Judgment, Ex. A).  While this spreadsheet does not identify the date each subscription was purchased (which makes it difficult to determine whether the claims are timely, *see* Discussion Sec. B(3)(i), *supra*), it succeeds where the Complaint fails for at least two reasons.  First, the chart identifies all journals at issue: it is not enough to identify eight journal subscriptions by one person, and assume that all other Defendants would be on notice of forty-two other subscriptions which they may or may not have purchased.  Second, the chart identifies the "speaker" of each false statement, i.e., the Defendant who purchased the subscription.

Physical Medicine and Rehabilitation — the only allegation pled with particularity — cannot constitute a pattern of racketeering activity in and of itself.  Plaintiff has failed to allege this element.

### c.   Plaintiff Has Failed to Allege Related and Continuous Acts

Plaintiff must demonstrate that the predicate acts were related, continuous, and pose a threat of continuing.  *H.J. Inc.*, 492 U.S. at 239, 242 (holding that "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity ... Congress was concerned in RICO with long-term criminal conduct" (emphasis in original)); *see also Spool*, 520 F.3d at 183-84 ("The ... 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern — a series of related predicate acts extending over a substantial period of time — or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." (citations omitted)).

Plaintiff alleges that the subscription fraud occurred from 2003 until 2012, and that it threatens to continue in the future given "the annual nature of subscription renewals."  (Compl. ¶ 37).  As discussed above, Plaintiff has only properly alleged one predicate act — Grossman's 2011 subscription to the Archives of Physical Medicine and Rehabilitation — and one predicate act cannot be related, continuous, or pose a threat of continuing.  Plaintiff has also

22

failed properly to plead this element, and as such, has not made out a civil RICO violation.

             **d.**        **Plaintiff's RICO Conspiracy Claim Is Not Well-Pled**

Similar issues imperil Plaintiff's RICO conspiracy claim. Section 1962(d) makes it unlawful for any person to conspire to violate Section 1962(c). 18 U.S.C. § 1962(d). A RICO conspiracy requires proof "that a defendant agreed with others (a) to conduct the affairs of an enterprise (b) through a pattern of racketeering." *United States* v. *Basciano*, 599 F.3d 184, 199 (2d Cir. 2010); *see generally United States* v. *Cain*, 671 F.3d 271, 291 (2d Cir. 2012). And while a conspirator charged with racketeering conspiracy need not commit, or even agree to commit, specific predicate acts, he "must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense." *Salinas* v. *United States*, 522 U.S. 52, 65 (1997); *see also Applins*, 637 F.3d at 81 ("it is sufficient to allege and prove that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity").

Considering these requirements in the civil RICO context, the Second Circuit has instructed that a plaintiff must prove that (i) the defendants agreed to form and associate themselves with a RICO enterprise; (ii) the defendants agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise; and (iii) if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity. *See Cofacredit, S.A.* v. *Windsor Plumbing Supply Co., Inc.*,

187 F.3d 229, 244-45 (2d Cir. 1999). Perhaps more importantly, analysis of Plaintiff's claim "begins with the premise that any claim for conspiracy under § 1962(d) necessarily fails where the underlying substantive claim is insufficiently pled." *Crabhouse of Douglaston Inc.* v. *Newsday Inc.*, 801 F. Supp. 2d 64, 89 (E.D.N.Y. 2011) (citing, *inter alia*, *First Capital Asset Mgmt., Inc.* v. *Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004)).

Here, Plaintiff alleges that the Defendants "agreed beginning, depending on the Subscribing Defendant, in 2003 to 2012 to commit two or more predicate acts of wire fraud and/or mail fraud in furtherance of their scheme," and that the agreement is "evidenced by the coordinated efforts of Pierre Grossman, PTI, IBIS, and the Subscribing Defendants in achieving the illegal objectives of the Enterprise." (Compl. ¶¶ 49-50). For the reasons noted above, however, Plaintiff has failed sufficiently to allege two or more predicate acts. By extension, it has failed to allege an agreement to conduct the affairs of the charged enterprise through two or more predicate acts. *See Helios Intern. S.A.R.L.* v. *Cantamessa USA, Inc.*, No. 12 Civ. 8205 (RWS), 2013 WL 3943267, at *9 (S.D.N.Y. July 31, 2013) ("In addition, in the absence of a validly pled substantive RICO claim, Plaintiffs' claim under 18 U.S.C. § 1962(d) for RICO conspiracy fails as well." (citation omitted)). Accordingly, the claim is inadequately pled.

### e.    Plaintiff Has Failed to Demonstrate Entitlement to Civil RICO Damages

Finally, as Plaintiff has failed in the Complaint to allege a civil RICO violation, it is not entitled to recover damages for any such violation. *See* 18

U.S.C. § 1964(c); *see also Lerner* v. *Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003) (observing that to state a claim under § 1964(c), a plaintiff "must plead, at a minimum, '(1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation'" (quoting *Commercial Cleaning Servs., L.L.C.* v. *Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001))).

### iii.    Some, But Not All, of Plaintiff's State Law Claims Are Well-Pled

#### a.    Plaintiff Has Adequately Alleged Its Breach of Contract Claim

To establish a claim for breach of contract under New York law, there must be proof of "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."  *Terwilliger* v. *Terwilliger*, 206 F.3d 240, 245–46 (2d Cir. 2000) (internal citations and quotation marks omitted).

Taking Plaintiff's allegations as true, Plaintiff performed upon the subscription contract by providing the journals at issue to Defendants. Plaintiff alleged that Defendants breached the subscription contract by selling the journals obtained at the individual rate to institutions.  Plaintiff has sufficiently alleged a breach of contract claim.

In New York, the statute of limitations for breach of an express or implied contract is six years.  N.Y. C.P.L.R. § 213(2); *see, e.g., Guilbert* v. *Gardner*, 480 F.3d 140, 149 (2d Cir. 2007).  Plaintiff has failed to allege when the actual breach occurred, but the Court assumes, for the purposes of this Opinion, that

the breach occurred in the year in which the subscription was purchased. Thus, Plaintiff is entitled to recover for subscriptions purchased after June 29, 2006.

### b.   Plaintiff Has Not Adequately Alleged Its Fraud Claim

The elements of a fraud claim under New York law are "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Amida Capital Mgmt. II, LLC* v. *Cerberus Capital Mgmt., L.P.*, 669 F. Supp. 2d 430, 444 (S.D.N.Y. 2009) (citation omitted). Plaintiff has alleged that Defendants purchased subscriptions at the individual rate, knowing that they intended to sell them to institutions at the higher institutional subscription rate.

The Second Circuit has held that "under New York law, parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." *Merrill Lynch & Co. Inc.* v. *Allegheny Energy, Inc.*, 500 F.3d 171, 183-84 (2d Cir. 2007) (citation omitted). "[A] misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty." *First Bank of the Americas* v.

*Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 21 (1st Dep't 1999) (citing *Deerfield Commc'ns Corp.* v. *Chesebrough–Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986)).

Plaintiff has alleged the misrepresentation of a future fact, i.e., future performance of the contract, and thus cannot sustain claims for both fraud and breach of contract.  That is, Plaintiff has not alleged that the Subscribing Defendants misrepresented that they were individuals and not institutions, but rather has alleged that the Subscribing Defendants knowingly misrepresented that they would not sell the journals to institutions; this gives rise to a breach of contract action, and not an action for fraud.  *See Allegheny Energy, Inc.*, 500 F.3d at 183-84.  Plaintiff's fraud claim is therefore not adequately pled.

### c.   **Plaintiff Has Not Adequately Alleged Its Conspiracy to Defraud Claim**

Because there is no independent cause of action for civil conspiracy under New York law, Plaintiff must first establish a claim for the underlying fraud, which it cannot do for the reasons discussed *supra*.  *See Filler* v. *Hanvit Bank*, 156 F. App'x 413, 417 (2d Cir. 2005) (summary order).  Thus, Plaintiff's claim for conspiracy to defraud is inadequately pled.

### d.   **Plaintiff Has Adequately Alleged Its Conversion Claim**

Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights."  *Vigilant Ins. Co. of Am.* v. *Hous. Auth.*, 87 N.Y.2d 36, 44 (1995) (internal quotation marks and citation omitted).  "Two key elements of conversion are (1) plaintiff's possessory right or interest in the

property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiffs['] rights."   *Pac. M. Int'l Corp.* v. *Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 396 (S.D.N.Y. 2012) (internal quotation marks omitted) (citing *Cruz* v. *TD Bank, N.A.*, 855 F. Supp. 2d 157, 174 (S.D.N.Y. 2012)).   Here, Plaintiff alleges that Defendants took possession of Elsevier's revenues, in the form of the higher institutional subscription rates, and its customer data. Plaintiff has adequately alleged its claim for common-law conversion.

In New York, the statute of limitations for conversion is three years, and begins to run when the conversion occurs.   N.Y. Civ. Prac. L. & R. § 214(3); *Johnson* v. *Smithsonian Inst.*, 9 F. Supp. 2d 347, 354 (S.D.N.Y. 1998); *Sporn* v. *MCA Records, Inc.*, 58 N.Y.2d 482 (1983).   For the purposes of this Opinion, the Court assumes the conversion occurred in the year the subscription was purchased; as such, Plaintiff is entitled to recover damages for subscriptions purchased after 2009.

## C.    Plaintiff Is Granted Leave to Replead

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court "should freely give leave [to amend] when justice so requires."   Fed. R. Civ. P. 15(a)(2); *see also Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (instructing that the mandate that leave to amend should "be freely given when justice so requires ... is to be heeded"); *Ruffolo* v. *Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).   "[I]t is within the sound discretion of the district court whether to grant or deny leave to amend."   *Zahra* v. *Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citation omitted).   Moreover, "[t]he rule in this Circuit has been

to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block* v. *First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993) (citation omitted).  However, "[l]eave to amend may be denied if the amendment would be futile." *Mathon* v. *Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1002-03 (E.D.N.Y. 1995) (collecting cases) (granting leave to replead civil RICO claim to plaintiff in default judgment motion).

Although Plaintiff has failed properly to allege its civil RICO claims, the Court finds that were Plaintiff sufficiently to plead the timeliness of its claims, and to state its claims with sufficient particularity under Rule 9(b), it could allege a colorable civil RICO claim.  To do otherwise would, in effect, reward Defendants for their strategic refusal to comply with the Federal Rules of Civil Procedure.  As such, Plaintiff is granted leave to replead the civil RICO claims in its Complaint.  Plaintiff is also granted leave to replead its state law claims, to the extent applicable.

## CONCLUSION

Defendant's motion is GRANTED, with the condition that Defendants reimburse Plaintiff $5,000 for attorney's fees and costs incurred in connection with this motion.  The Clerk of Court is directed to vacate the entries of default as to Defendants Grossman, IBIS, and PTI.

Plaintiff's application for default judgment against Defendants IBIS, PTI, and Grossman is DENIED.

It is further ORDERED that Plaintiff is granted leave to replead its Complaint, which must be filed within 60 days of the date of this Order.

It is further ORDERED that Defendants shall answer or otherwise respond within 30 days of the filing of Plaintiff's Amended Complaint.

SO ORDERED.

Dated: December 5, 2013
      New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

30