UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELSEVIER INC., ELSEVIER B.V., ELSEVIER LTD., and ELSEVIER MASSON SAS., <br><br> Plaintiffs, <br><br> v. <br><br> PIERRE GROSSMAN, IBIS CORP., PUBLICACOES TÉCNICAS INTERNACIONAIS,  and JOHN DOE NOS. 1-50, <br><br> Defendants. | Civil Action No. 12-cv-5121 (KPF) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION, BY ORDER TO SHOW CAUSE, FOR A WRIT OF ATTACHMENT**

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
*Attorneys for Plaintiffs Elsevier Inc., Elsevier B.V., Elsevier Ltd., and Elsevier Masson SAS*

Of Counsel and on the Brief:

    Jason L. Jurkevich

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL AND FACTUAL HISTORY ........................................................................... 2

LEGAL ARGUMENT .................................................................................................................. 4

I.   ELSEVIER MEETS THE REQUIREMENTS FOR A WRIT OF
     ATTACHMENT UNDER FED. R. CIV. P. 64 AND N.Y. C.P.L.R. § 6201 ................... 4

     A.   Elsevier has Stated a Claim for a Money Judgment ............................................... 5

     B.   Elsevier Has a Probability of Success On the Merits ............................................. 6

     C.   Elsevier Can Establish One or More Grounds For Attachment Under
          C.P.L.R. § 6201 ....................................................................................................... 6

          1.   Attachment is Warranted Under C.P.L.R. § 6201(1) Because PTI
               Is a Foreign Corporation Not Qualified to Do Business in New
               York ............................................................................................................ 6

          2.   Attachment is Warranted Under C.P.L.R. § 6201(3) Because There
               is A Risk That the Funds in the IBIS Account Will be Transferred
               or Secreted With an Intent to Defraud Creditors ....................................... 8

     D.   There are No Counterclaims Asserted against Elsevier .......................................... 9

II.  GRANTING ELSEVIER A WRIT OF ATTACHMENT WOULD FURTHER
     JUDICIAL EFFICIENCY AND ECONOMY BECAUSE IT WOULD
     ELIMINATE THE TIME AND RESOURCES REQUIRED FOR A JURY
     TRIAL IN THIS ACTION ................................................................................................ 9

III. THE COURT SHOULD IMPOSE ONLY A MINIMAL UNDERTAKING
     REQUIREMENT BY ELSEVIER BECAUSE THERE IS NO SIGNIFICANT
     RISK OF DAMAGES TO PTI OR IBIS ......................................................................... 11

IV.  THE COURT SHOULD ISSUE TEMPORARY RESTRAINTS TO PREVENT
     THE TRANSFER OR WITHDRAWAL OF FUNDS BEFORE THE COURT
     CAN ISSUE ITS RULING ON ELSEVIER'S APPLICATION FOR
     ATTACHMENT .............................................................................................................. 11

CONCLUSION ........................................................................................................................... 13

**TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.,*
  699 F.3d 230 (2d Cir. 2012)..................................................................................................6

*Fustok v. Conticommodity Services, Inc.,*
  873 F.2d 38 (2d Cir. 1989)....................................................................................................6

*HarperCollins Publishers L.L.C. v. Gawker Media LLC,*
  721 F. Supp. 2d 303 (S.D.N.Y. 2010)..................................................................................12

*Lippe v. Bairnco Corp.,*
  249 F.Supp.2d 357 (S.D.N.Y. 2003).....................................................................................9

*N.Y. Dist. Council of Carpenters Pension Fund v. KW Const., Inc.,*
  Civ. Action No. 07-8008 (RJS), 2008 U.S. Dist. LEXIS 40517
  (S.D.N.Y. May 16, 2008)..................................................................................................5, 9

*Tamarin v. Adam Caterers,*
  13 F.3d 51 (2d Cir. 1993).......................................................................................................6

**STATE STATUTES AND RULES**

C.P.L.R. § 5201....................................................................................................................7

C.P.L.R. § 6201...........................................................................................................1, 4, 5, 6

C.P.L.R. § 6201(1)................................................................................................................6

C.P.L.R. § 6201(3).............................................................................................................8, 9

C.P.L.R. § 6202....................................................................................................................7

C.P.L.R. 6212(a)...............................................................................................................5, 9

C.P.L.R 6212(b)..................................................................................................................11

N.Y. Debtor & Creditor Law § 273-a..................................................................................7

**FEDERAL RULES**

Fed. R. Civ. P. 64(a) ............................................................................................................4

**PRELIMINARY STATEMENT**

Plaintiffs Elsevier, Inc., Elsevier B.V., Elsevier Ltd., and Elsevier Masson SAS (collectively, "Elsevier") submit this brief in support of Elsevier's motion, by way of order to show cause, for pre-judgment attachment of a J.P. Morgan Chase Bank ("Chase") account held by the defaulting defendant International Bibliographic Information Systems Corp. ("IBIS"). Elsevier is entitled to a writ of attachment under N.Y. C.P.L.R. § 6201. Moreover, Elsevier believes that granting it a writ of attachment will serve judicial efficiency and party economy because it would most likely eliminate the time and resources needed for a jury trial in this action, and facilitate a final resolution of this matter.

Notwithstanding that both PTI and IBIS have been adjudged jointly and severally liable for Elsevier's RICO and remaining common law claims, Elsevier has continued litigating this action against Defendant Pierre Grossman personally because Elsevier had no way of knowing whether PTI or IBIS had assets in the jurisdiction that could satisfy an eventual judgment, whereas Elsevier was aware of real property owned by Mr. Grossman and his wife in Long Island. Mr. Grossman has recently revealed that, in fact, there is slightly over $500,000 in IBIS' Chase account, which -- as Mr. Grossman testified during his deposition -- consists of funds transferred by PTI, a foreign corporation not authorized to do business in New York. Elsevier believes this amount would be more than sufficient to satisfy a final judgment in this action, even including treble damages and an award of counsel fees, as mandated by the RICO statute.

Elsevier proposes that, in connection with the requested writ of attachment, the claims against Mr. Grossman be stayed and, instead, the Court schedule an inquest on damages (either in person or on the papers, at the Court's discretion) and allow Elsevier's counsel to make a fee application. Once a final judgment is entered, Elsevier would be able to levy on the Chase account. Barring any unusual developments, such as a bankruptcy petition by IBIS during the

1

90-day preference period, Elsevier would then dismiss its claims against Mr. Grossman with prejudice.

## PROCEDURAL AND FACTUAL HISTORY

This action arises out of Defendants' subscription fraud scheme perpetrated over the course of several years. Elsevier publishes scientific, medical, and technical journals. Subscriptions are sold at both institutional rates and at individual rates, which are lower. Purchasers of individual rate subscriptions represent and warrant that such subscriptions are for the use of no more than one identified eligible individual subscriber for valid personal use. Despite this requirement, the Defendants PTI (the customer-facing subscription agency), IBIS (the publisher-facing order processing arm of PTI), and Pierre Grossman (the CEO and owner of PTI and IBIS) have placed orders for subscriptions to various scientific, medical, and technical journals published by Elsevier at individual rates when, in fact, the actual end users were institutions. Elsevier has asserted claims for damages arising under RICO and New York common law.

By Opinion and Order dated December 5, 2013, the Court vacated the Defendants' initial default in this matter and granted Elsevier leave to file an amended complaint, which it did on or about February 3, 2014. [Declaration of Jason L. Jurkevich ("Jurkevich Dec."), Exs. A, B.] Thereafter, the three Defendants, who appeared in the action through their former counsel, requested a pre-motion conference and subsequently filed a motion to dismiss based on lack of personal jurisdiction and failure to state a claim upon which relief can be granted, which Elsevier opposed. By Opinion and Order dated January 5, 2015, the Court largely denied the Defendants' motion, finding that personal jurisdiction exists over all three Defendants and also holding that Elsevier's amended complaint adequately set forth its causes of action alleging RICO, RICO

conspiracy, breach of contract, and conversion.[1]  [Jurkevich Dec., Ex. D.]

The day before the scheduled Rule 16 initial scheduling conference in this case, the Defendants' attorney, Van Aaron Hughes, Esq.[2], filed a motion to be relieved as counsel, which the Court granted by Order dated January 23, 2015.  [*Id.,* Ex. E.]  As part of that Order, the Court ordered the Defendants to notify the Court by February 13, 2015 whether they intended to retain new counsel, and further ordered the Defendants to answer the amended complaint by February 27, 2015.  [*Id.*]  In a subsequent Order dated January 29, 2015, the Court reminded the Defendants that the corporate Defendants could not appear in the case *pro se*.  [*Id.,* Ex. F.]  By letter dated February 13, 2015, Defendant Pierre Grossman advised the Court that neither PTI nor IBIS intended to retain new counsel.  [*Id.,* Ex. G.]  On February 27, 2015, Mr. Grossman filed his Answer to the amended complaint.

Elsevier obtained certificates of default as to both PTI and IBIS as a result of their failure to retain counsel and respond to the amended complaint.  Elsevier then moved for default judgment against PTI and IBIS as to liability.  On May 8, 2015, the Court entered default judgment as to liability against both corporate Defendants.  [*Id.,* Ex. H.]

Because Mr. Grossman appeared *pro se,* Elsevier could not obtain a final judgment as to damages against PTI and IBIS at that time.  Additionally, because of the lack of a final money judgment, Elsevier was not permitted to seek discovery regarding the assets of PTI and IBIS. [*Id.,* Ex. I.]  As a result, Elsevier had no way of knowing if either PTI or IBIS had assets in the jurisdiction that could be used to satisfy an eventual judgment.  By contrast, Elsevier was aware of the Garden City apartment owned personally by Mr. Grossman and his wife.  Based upon his

---

[1]  The Court granted the Defendants' motion to dismiss Elsevier's common law fraud and conspiracy claims.

[2]  Mr. Hughes was with the Dorsey & Whitney firm when he first appeared in the action. At the time of his withdrawal, he was with the firm of Brownstein Hyatt Farber Schreck.

3

apparent capacity to satisfy a monetary award, Elsevier chose to continue to litigate the action against Mr. Grossman personally.

Late last week, Elsevier discovered for the first time that IBIS holds a significant balance in an account at Chase. By email correspondence dated December 17, 2015, Mr. Grossman sent the Court (with a copy to me) a copy of a notice sent by Chase to IBIS advising that the Chase account, with a balance of $523,969.80, had been placed on hold pursuant to a restraining notice served by John Wiley & Sons ("Wiley"), another publisher that had brought similar claims against Mr. Grossman and other individuals in New York State Supreme Court and obtained a default judgment against Mr. Grossman. [*Id.,* Ex. K.]

Although held by IBIS in its Chase account, the funds really belong to PTI. PTI, which is the customer-facing subscription agency, collects payments from its customers for subscription orders, and then transfers a portion of those funds to IBIS, the publisher-facing arm of Mr. Grossman's business, for the purpose of making payments to U.S. publishers such as Elsevier. Indeed, Mr. Grossman testified during his deposition that he established IBIS specifically to facilitate PTI's international payments to U.S. publishers and to reduce the transactional fees associated with such international transfers of funds. [*Id.,* Ex. O, at 47:3 -- 49:18.] In one of his recent emails, Mr. Grossman explicitly accused Wiley of "depriving PTI Brazil of its funds" by placing a hold on the IBIS account. [*Id.,* Ex. M.]

## LEGAL ARGUMENT

### I. ELSEVIER MEETS THE REQUIREMENTS FOR A WRIT OF ATTACHMENT UNDER FED. R. CIV. P. 64 AND N.Y. C.P.L.R. § 6201

Fed. R. Civ. P. 64(a) authorizes a federal court to apply the jurisdiction's state law for seizing property to secure satisfaction of a potential judgment, including prejudgment

4

attachment. *See N.Y. Dist. Council of Carpenters Pension Fund v. KW Const., Inc.,* Civ. Action No. 07-8008 (RJS), 2008 U.S. Dist. LEXIS 40517, *3-*4 (S.D.N.Y. May 16, 2008).

N.Y. law provides for prejudgment attachment, stating in relevant part:

> An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:
>
> 1. the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state; [or]
>
> 3. the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts; ...

N.Y. C.P.L.R. § 6201 (McKinney 2011). Under N.Y. C.P.L.R. 6212(a), a party may obtain an order of attachment upon demonstrating that (1) it has stated a claim for a money judgment; (2) it has a probability of success on the merits; (3) one or more grounds for attachment provided in section 6201 exist; and (4) the amount demanded from the defendant is greater than the amount of all counterclaims known to the party seeking attachment. Elsevier can establish all these requirements.

### A. Elsevier has Stated a Claim for a Money Judgment

Elsevier has clearly stated a claim for a money judgment. Its complaint asserted a claim for damages, consisting of the difference between the amount that the Defendants should have been charged for institutional rate orders and the individual rates that the Defendants actually paid for the fraudulent subscriptions. The amended complaint attached a schedule with quantified those damages. As a result of discovery, Elsevier revised its schedule, as attached to its proposed pre-trial order. The revised schedule sets forth alleged actual damages of $31,345. When trebled, as required by the RICO statute, Elsevier's damage claim amounts to $94,035.

5

Even with an allowance for any fee award that will ultimately be granted, the current balance in the Chase account should be more than sufficient to cover the final judgment amount in this case. For purposes of this application, therefore, Elsevier believes an attachment in the amount of $300,000 should be sufficient security for any final judgment.

### B. Elsevier Has a Probability of Success On the Merits

As against PTI and IBIS, Elsevier has more than a probability of success. Both PTI and IBIS have already been adjudged liable as to all of Elsevier's remaining claims, including both its RICO claims. There is therefore no doubt that PTI and IBIS are liable to Elsevier for damages. It remains only for the Court to determine the amount of damages following an inquest. Such an inquest will take up little of the Court's time, as the calculation for each fraudulent subscription is straightforward. Indeed, the Court, in its discretion, may even consider Elsevier's proofs by written submission. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.,* 699 F.3d 230, 234 (2d Cir. 2012) (whether it is "necessary and proper" to hold an inquest on damages following a default is within the discretion of the district court) (citing *Tamarin v. Adam Caterers,* 13 F.3d 51 (2d Cir. 1993)). *See also Fustok v. Conticommodity Services, Inc.,* 873 F.2d 38, 40 (2d Cir. 1989) (upholding district court's decision to award damages based on review of detailed affidavits and documentary evidence).

### C. Elsevier Can Establish One or More Grounds For Attachment Under C.P.L.R. § 6201

#### 1. Attachment is Warranted Under C.P.L.R. § 6201(1) Because PTI Is a Foreign Corporation Not Qualified to Do Business in New York

PTI is a Brazilian corporation, with its principal place of business in Brazil, that is not qualified to do business in New York. N.Y. C.P.L.R. § 6201(1). Mr. Grossman has declared under penalty of perjury to this Court that PTI does not conduct business in New York, and he confirmed at his deposition that PTI maintains no employees or offices in New York. [*Id.,* Exs.

C, O at 33:25 -- 34:15.] This is sufficient grounds for entry of a writ of attachment. The Court may attach any property against which a money judgment may be enforced in accordance with C.P.L.R. § 5201. *See* N.Y. C.P.L.R. § 6202. According to C.P.L.R. § 5201, a money judgment entered upon a joint liability of two or more persons may be enforced against individual property of those persons. Because Elsevier would be able to enforce its eventual money judgment against the property of either PTI or IBIS, either defendant's property is subject to a writ of attachment.

Moreover, even though the Chase account is held in the name of IBIS, as Mr. Grossman testified at his deposition and has repeated in correspondence, the funds in that account belong to PTI. PTI collects payments for subscription orders from its customers. It then sends a portion of those funds to IBIS, which then uses those funds to make payments to U.S.-based publishers for the subscription orders placed by PTI. The very purpose of IBIS's existence is for PTI to be able to process international payments to U.S.-based publishers, while minimizing transactional fees that would otherwise be required every time PTI wanted to transfer money from Brazil to the United States. [Jurkevich Dec., Ex. O, at 47:3 -- 49:18.] Thus, in a real sense, the funds currently in the IBIS account are PTI's funds, which are deposited into IBIS's account solely for the purpose of paying for subscriptions placed by PTI and furthering PTI's business.

Even if IBIS were not jointly and severally liable with PTI -- which it is -- Elsevier would be able to enforce an eventual money judgment on PTI's funds in the IBIS account under New York's fraudulent conveyance laws. *See* N.Y. Debtor & Creditor Law § 273-a (conveyance made without fair consideration when the person making it is defendant in an action for money damages is fraudulent as to the plaintiff in that action); § 279 (contingent creditor may seek to restrain or set aside fraudulent conveyance).

7

      2.      **Attachment is Warranted Under C.P.L.R. § 6201(3) Because There is A Risk That the Funds in the IBIS Account Will be Transferred or Secreted With an Intent to Defraud Creditors**

In addition to the foregoing ground for attachment, Elsevier believes there is a significant risk that without such restraint, Mr. Grossman may transfer or secret the funds currently in the IBIS account to a new account in the name of some other person or entity. *See* N.Y. C.P.L.R. § 6201(3). Although the Chase account is currently subject to a restraining notice filed by Wiley, Mr. Grossman has advised this Court, in an email dated December 23, 2015, that he plans to move to vacate Wiley's restraining notice on the grounds that Wiley's judgment is against Mr. Grossman personally, not against IBIS.

Attachment is necessary to protect Elsevier's interest in the Chase account notwithstanding Wiley's restraining notice. Elsevier has no control over whether the restraining notice issued by Wiley is removed by the State Supreme Court or voluntarily by Wiley. Even if the state court leaves the restraining notice in place, it may be reduced in amount so as to only secure the amount of Wiley's judgment. Under any of these circumstances, there would be nothing to stop Mr. Grossman from dissipating the assets in the Chase account (or at least those in excess of Wiley's judgment amount) and putting them beyond Elsevier's reach. Indeed, Mr. Grossman has indicated that his expected application to vacate the restraining notice in the Wiley action is for the purpose of enabling him to transfer or withdraw the funds. [Jurkevich Exs. L, M.]

Mr. Grossman has already demonstrated his disregard of IBIS's separate corporate form and his use of funds held by IBIS for personal expenses. For example, although the Chase account is in IBIS's name, the Grossmans apparently used that account to pay for expenses related to the Grossman's Garden City apartment, which they own personally (according to a questionnaire response prepared by the property manager). [Jurkevich Dec. Ex. P.] Similarly,

while Mr. Grossman told this Court in an email that Wiley seized a car "which is IBIS Corp. property" and used by "its executives" while on business trips to suppliers in the U.S., he told counsel for Elsevier and Wiley that the car -- a 2015 Lexus SUV -- was an anniversary present for his wife. [Jurkevich Dec. Exs. J, N.]

Mr. Grossman's lack of candor regarding the IBIS account, as well as the apparent use of that account for personal expenses, are "badges of fraud" that support an inference of an intent to defraud creditors. *See Lippe v. Bairnco Corp.,* 249 F.Supp.2d 357, 374-75 (S.D.N.Y. 2003). Moreover, this Court has also found that a showing of a current intent is not necessary. The requirements of "§ 6201(3) may be satisfied where the plaintiff merely demonstrates past fraudulent transfers by the defendant." *Carpenters Pension Fund,* 2008 U.S. Dist. LEXIS 40517 at *17-*18.[3]

### D. There are No Counterclaims Asserted against Elsevier

The last requirement set forth by Rule 6212(a), *i.e.,* that Elsevier's claim exceeds any known counterclaims, does not apply here as the Defendants have not asserted any counterclaims against Elsevier.

### II. GRANTING ELSEVIER A WRIT OF ATTACHMENT WOULD FURTHER JUDICIAL EFFICIENCY AND ECONOMY BECAUSE IT WOULD ELIMINATE THE TIME AND RESOURCES REQUIRED FOR A JURY TRIAL IN THIS ACTION

As demonstrated above, the Court should grant a writ of attachment as to the Chase account because Elsevier satisfies the requirements for such relief. Moreover, the Court should grant the requested attachment because it will substantially further the interests of judicial economy. If Elsevier is assured of a sufficient fund against which it can collect on an eventual

---

[3] For these reasons, as well as the fact that the funds could be dissipated as well through "ordinary course" transactions if the Wiley restraining notice is removed or reduced in amount, we request issuance of temporary restraints prohibiting transfer or withdrawal of funds, as well as providing for service of a restraining notice and a copy of the proposed Order to Show Cause.

9

money judgment, there would be no need to proceed with a jury trial on Elsevier's individual claims against Mr. Grossman, which would likely last at least the better part of a week.

No trial is necessary to prove liability against PTI and IBIS because their liability has already been established by default judgment. The only remaining proceeding required to reach a final judgment against is an inquest as to damages. The only reason that inquest has not yet occurred was that Mr. Grossman appeared personally in the action *pro se*. As a result, under the Court's Individual Rules of Practice, a final judgment as to damages was deferred until the individual claims against Mr. Grossman were disposed of. The only reason that Elsevier has chosen to continue litigating its claims against Mr. Grossman was that, until late last week, Elsevier had no idea whether either PTI or IBIS had assets that were subject to enforcement (notwithstanding its efforts to seek that information in discovery).

Now that Mr. Grossman has disclosed the balance available in the IBIS Chase account, there is little reason for the Court and the parties to go through the exercise of a jury trial if the plaintiffs are able to obtain satisfaction of its judgment against the corporate defendants. It would be a more efficient use of the Court's time and the parties' resources to focus on the corporate parties whose liability is already established, and against whom damages can also be established through an expedited damages inquest, either with a brief hearing or, at the Court's discretion, on written submissions. Such a process -- including a fee application by Elsevier's counsel in connection with Elsevier's entitlement to a fee award under RICO -- could likely be completed in thirty days, subject to the Court's schedule.

Once a final judgment issues as to PTI and IBIS, as long as a writ of attachment is in place, there should be no difficulty in executing on the Chase account. Moreover, so long as no effort is made to undermine such enforcement -- such as, for example, a bankruptcy petition by

10

IBIS before the expiration of the 90-day preference period following such execution -- there would be no need to continue the litigation against Mr. Grossman individually.  Once Elsevier is able to enforce a final judgment and be secure that it can retain its judgment proceeds, it would voluntarily dismiss its claims against Mr. Grossman with prejudice.

### III. THE COURT SHOULD IMPOSE ONLY A MINIMAL UNDERTAKING REQUIREMENT BY ELSEVIER BECAUSE THERE IS NO SIGNIFICANT RISK OF DAMAGES TO PTI OR IBIS

C.P.L.R 6212(b) requires the plaintiff to give an undertaking in an amount to be fixed by the Court, but in any event no less than $500, to cover the risk of damages to the defendant if it is ultimately determined that the defendant is not liable or that the plaintiff was not entitled to attachment.  Additionally, the purpose of the undertaking is to secure payment to the sheriff of his or her allowable fees.

For the reasons discussed at length above, this is not a typical application for attachment.  The corporate Defendants have already been adjudged liable; the only issue is the amount of damages and attorneys' fees for which they will be held liable.  Moreover, as demonstrated above, Elsevier has demonstrated its entitlement to attachment under the statute.  Thus, there is no reasonably foreseeable risk of any damages resulting to IBIS or PTI due to an improper attachment.

Nevertheless, because Elsevier is not aware of any authority allowing the Court to waive the undertaking requirement entirely, it believes that the minimum amount required by the statute is sufficient.

### IV. THE COURT SHOULD ISSUE TEMPORARY RESTRAINTS TO PREVENT THE TRANSFER OR WITHDRAWAL OF FUNDS BEFORE THE COURT CAN ISSUE ITS RULING ON ELSEVIER'S APPLICATION FOR ATTACHMENT

For the same reasons that Elsevier is entitled to a writ of attachment, as demonstrated above, it is also entitled to a temporary restraining order prohibiting PTI or IBIS (or any of their

11

representatives, agents or employees, including but not limited to Mr. Grossman or his wife) from using, transferring or withdrawing the funds in the Chase account, pending before the Court's decision on Elsevier's application. The standard for obtaining a temporary restraining order are the same as those for obtaining injunctive relief. *See HarperCollins Publishers L.L.C. v. Gawker Media LLC,* 721 F. Supp. 2d 303, 305-06 (S.D.N.Y. 2010) (plaintiffs seeking temporary restraining order must show (1) either likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [applicant's] favor;" and (2) likelihood of irreparable harm in the absence of such order).

In Point I above, Elsevier established all of the requirements for a writ of attachment, which itself requires a probability of success on the underlying claims. Elsevier has thus established likelihood of success against PTI and IBIS both on its substantive claims as well as this particular application. Moreover, Elsevier has established the risk of irreparable harm; if the Defendants are free to transfer or withdraw the funds from the IBIS account, there will be no practical way for Elsevier to recover those funds to satisfy an eventual money judgment.

In addition, the balance of hardships decidedly favors Elsevier. The duration of such temporary restraints, until the Court issues a ruling on Elsevier's application, will presumably be short, so that if the Court ultimately were to deny the request, the temporary restraint would not materially or adversely affect PTI or IBIS. On the other hand, if the Court grants the application -- as Elsevier believes it should -- Elsevier would be materially disadvantaged if, before the Court issued its ruling, the Defendants were able to move the funds beyond Elsevier's reach, thus defeating the very point of this application. A temporary restraining order is appropriate to maintain the status quo by keeping the funds in place at least until the Court can issue its ruling

on the application.

## CONCLUSION

For the foregoing reasons, Elsevier requests that the Court (i) issue an Order to Show Cause why the Court should not issue an Order attaching the IBIS Chase account in the amount of $300,000, and (ii) grant Elsevier's request for a Temporary Restraining Order allowing Elsevier to issue a restraining notice to Chase to temporarily freeze the funds in the IBIS account until the attachment request is adjudicated and to serve Chase with a copy of the Order issued by this Court.

        Respectfully submitted,

        SILLS CUMMIS & GROSS P.C.
        One Riverfront Plaza
        Newark, New Jersey 07102
        (973) 643-7000
        *Attorneys for Plaintiffs Elsevier Inc., Elsevier B.V., Elsevier Ltd., and Elsevier Masson SAS*

        By:    *s/ Jason L. Jurkevich*
                JASON L. JURKEVICH

Dated: December 28, 2015