**From:** Pierre Grossmann - YesIcandoB2B.com [mailto:iampierre@yesicandob2b.com]
**Sent:** segunda-feira, 30 de maio de 2016 14:55
**To:** 'failla_nysdchambers@nysd.uscourts.gov'
**Cc:** 'Jason Jurkevich'; 'nhaff@balberpickard.com'; 'mstratton@Elsevier.com'; 'momalley@elsevier.com'; 'tkeavey@wiley.com'; 'rmaldonado@balberpickard.com'; 'relfenbein@Wiley.com'; 'Max Gershenoff'; 'scwhitteh@nycourts.gov'
**Subject:** Elsevier Inc. et al. v. Pierre Grossman, et al., Civ. Action No. 12-5121 (KPF)

May 30, 2016
PIERRE GROSSMANN
Pro Se
Sao Paulo, SP Brazil
Direct Dial(1) 516 740 1099
e-mail pg@pti.com.br and pg@Ibisc.com

<u>Via  ECF and E-Mail</u>

Hon. Katherine Polk Failla, U.S.D.J
United States District Court
Southern District of New York
Thurgood Marshall US Courthouse
40 Foley Square, Room 2103
New York, NY 10007

**<u>Civil. Action No. 12.-cv-5121 (KPF)</u>**
Re:. *Elsevier, Inc, et al v.Pierre Grossman, et al*
 Cc Jason Jurkevich and others
Cc Nicole Haff and others

Honorable Judge Failla,

I am writing to you now in reply to Jason Jurkevich attached letter and the Account Activity Report I received today the IBIS Corp Morgan Chase Account Activity for May 2016 **with the present balance $0.00** , Available Balance ( $823.969.80 ) instructed by legal order of ELSEVIER to place a hold on these funds  $300.000.00 and instructed  by legal order to place a hold by JOHN WILEY AND Sons $523.969.80  and withdrawal of $147.385.72. shutting down IBIS Corp and PTI businesses by stealing the money of PTI and IBIS clients.

Please inform attorney Jason Jurkevich for Elsevier and attorney Nicole to go easy with the money they managed to steal from IBIS Corp Chase Bank account, because  very soon  Elsevier and Wiley **,** **PSI** and others that made fraud contracts with Brazilian Public institutions will have to return the money, including paying huge fines for monitoring end –user abroad and for not paying taxes The victims already filled complaint at the Attorney General and Police .Once PTI begin a lawsuit in Brazil  the corrupt lawyers will  also go to jail like other suppliers that committed the same heinous crimes to the economy in

Brazil . The money they stole belongs to public and private educational research institutions and belongs hard working people.

According to the reference book "Licensing Digital Content –A practical Guide for Librarians- by Lesley Ellen Harris ,under international copyright principles, you apply the copyright law where the work is being used . Thus, if an end – user downloads and article in Brazil, the use of the article by the end-user is subject to the copyright laws Brazil, even if the library that has the license for the periodical in which the article appears is based in the United States. And in the same book about MONITORING USE WITHOUT END-USERS CONSENT IS = IS AN INVASION OF PRIVACY EVEN IF YOU MONITOR WITH AUTHORIZATION –THE LICENSE IS VIOLATING PERPETUAL MORAL RIGHTS PROVISIONS WORLDWIDE..

Elsevier BV, John Wiley and Sons, EBSCO and other members of Andrew Pitt-PSI Digital Cartel licensed copyrighted digital content to more than 450 research institutions in Brazil, made illegal contracts arrangements violating Brazil´s Anti-Corruption Laws that predetermines the Jurisdiction clause in US Courts not Brazil and worse they monitored abroad in real –time competitive intelligence of the entire Brazilian marketplace , without consent, in order to track usage of its content –who is using the content, how often in order to invade the privacy, get privileged information and blackmail end-user.and competitors.
Such as Pierre Grossmann, my family, my employees and companies such PTI, IBIS and PPT. I am also filling complaint against all lawyers to the Departmental Disciplinary Committee at the Courts APPELLATE DIV. First Judicial Department.

Judge Madden granted the IBIS Corp Chase Bank account to John Wiley & Sons based on Nicole Haff fraud and lies that I failed to answer a default judgment of $261.984.90 was entered against Pierre Grossmann also my lawyers (who, I assure you got paid more than $320.000.00 to defend me but betrayed their obligations).

**Everybody in the world knows that in 2003 "FORBES FYI provided US. Intelligence with address of Saddam Hussein´s spider hole after receiving Hussein´s Forbes Subscription renewal card " (Forbes FYI magazine).**

Jason Jurkevich, Martin O Malley, Mathew Stratton of Elsevier Christopher McKenzie, Tom Keavey , Reed Elfeinbein and other John Wiley executives are spying clients in real-time after they licensed their periodical database to Capes and Petrobras, hosted in datacenters abroad, got privileged inside trade information of the Brazilian oil and gas company Petrobras, that lost USD$ billions because of this fraud licensing agreements with corrupt government officials in Brazil in order to benefit Elsevier and Wiley shareholders.

Elsevier and Wiley should make a settlement with me ,take way these two lawsuits and pay my losses for shutting down my business.

Respectfully submitted,

Pierre Grossmann.
Pro Se

**Sills Cummis & Gross**
A Professional Corporation

Hon. Katherine Polk Failla, U.S.D.J.  Page 2
May 27, 2016

Late last week, we were advised by Chase that the actual balance in the IBIS account was far less than the "hold amount" reflected in the aforementioned notice, and also substantially less than the $300,000 amount reflected in the Court's January 29, 2016 Order. In fact, according to the Chase attorney who contacted us, the actual balance is well below $200,000.

According to Chase, the "hold amount" was calculated by doubling the amount of the default judgment obtained by John Wiley & Sons, Inc. ("Wiley") against Mr. Grossman in the action pending in New York State Supreme Court (the restraining notice served by Wiley was the original basis for Chase's imposition of a hold on the IBIS account).[1] The "hold amount" effectively acts a maximum amount to be restrained, but does not necessarily reflect the actual balance, which can be -- and in this case is -- far less. Indeed, the actual balance is less that the total amount of the Wiley judgment alone, irrespective of what judgment may be issued against IBIS in this case.

The attorney for Chase also advised that the State Supreme Court had denied Mr. Grossman's motion to vacate Wiley's restraining notice and that Wiley had stated its intention to move forward with enforcement efforts. The Chase attorney recognized that the amount of the Court's Preliminary Injunction Order exceeded the amount of the account balance and, in reviewing Elsevier's brief, suspected (correctly) that Elsevier was under a misimpression regarding the balance in the IBIS account.

We have since been advised by Chase that it was served with an execution issued by Wiley -- even though Wiley apparently has not commenced a special proceeding or obtained a turnover order in accordance with N.Y. C.P.L.R. 5225(b) to obtain payment from IBIS (which is not a judgment debtor or even a party in the Wiley action). The attorney for Chase also stated that given the existence of Wiley's execution and the Preliminary Injunction Order, Chase will be filing an interpleader action with respect to the IBIS account so that the court can determine Wiley and Elsevier's competing interests in the IBIS account.

We do not believe that the new information clarifying the amount of the balance in the IBIS account impacts any part of the Court's reasoning set forth in its Preliminary Injunction Order. Nevertheless, we wanted to ensure that the record accurately reflected the facts at issue before the Court renders a final determination of Elsevier's application for attachment, and to inform the Court as to the current state of affairs with respect to the IBIS account.

We look forward to the Court's decision on the pending motions. Thank you for your consideration of this matter.

Respectfully,

s/ Jason L. Jurkevich

JASON L. JURKEVICH

cc:  Mr. Pierre Grossman (via email)

---

[1] According to the Chase attorney who contacted me, this is consistent with Chase's standard practice when served with a restraining notice.

# Sills Cummis & Gross
### A Professional Corporation

The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Tel: (973) 643-7000
Fax (973) 643-6500

Jason L. Jurkevich
Of Counsel
Direct Dial: 973-643-5297
Email: jjurkevich@sillscummis.com

101 Park Avenue
28th Floor
New York, NY 10178
Tel: (212) 643-7000
Fax: (212) 643-6500

600 College Road East
Princeton, NJ 08540
Tel: (609) 227-4600
Fax: (609) 227-4646

May 27, 2016

**Via ECF and E-mail**

Hon. Katherine Polk Failla, U.S.D.J.
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2103
New York, New York 10007

Re: *Elsevier, Inc., et al. v. Pierre Grossman, et al.*
    Civ. Action No. 12-cv-5121 (KPF)

Dear Judge Failla:

We represent plaintiffs Elsevier, Inc., Elsevier B.V., Elsevier Ltd., and Elsevier Masson SAS (collectively, "Elsevier") in this matter.

As the Court is aware, the parties are awaiting a decision by the Court on the pending post-trial motions by Elsevier and defendant Pierre Grossman. Elsevier's application for a writ of attachment regarding a bank account held by defaulting defendant International Bibliographic Information Services Corporation a/k/a IBIS Corp. ("IBIS") at JP Morgan Chase Bank ("Chase") is also pending, although the Court did issue an Order dated January 29, 2016, granting preliminary injunctive relief restraining the IBIS account in the amount of $300,000 pending a decision on Elsevier's application for a writ of attachment. [Dkt. No. 180.]

Based upon additional information that we recently received, we write to correct a statement made in Elsevier's brief in support of its order to show cause for a writ of attachment, which was filed on or about December 28, 2015 [Dkt. No. 155], and to update the Court regarding the status of the IBIS account.

In Elsevier's initial moving brief for attachment, we stated that the IBIS account had a balance of approximately $523,000. Elsevier's statement as to the amount of the account balance was based on correspondence that Mr. Grossman had sent to the Court, with a copy to Elsevier, that included a notice he had received from Chase stating that a "hold amount" of $523,969.80 had been placed on the IBIS account. [Dkt. No. 157-11.] At no time did Mr. Grossman provide any information or make any statement as to the actual balance of the IBIS account, nor did he seek to correct Elsevier's statement as to the amount held in that account.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: MADDEN, Justice      PART 11

JOHN WILEY & SONS INC
-v-
GROSSMAN, P

INDEX NO. 650375/13
MOTION DATE _____
MOTION SEQ. NO. 8

The following papers, numbered 1 to ____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____
Answering Affidavits — Exhibits _____ | No(s). _____
Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is permitted to be withdrawn pursuant to the stipulation of the parties that the records attached as Exhibit 'C' are business records of non-party Greenthal Property Management.

Dated: March 24, 2016.

HON. JOAN A. MADDEN, J.S.C.

1. CHECK ONE: ............................................ ☐ CASE DISPOSED   ☒ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: .......................MOTION IS: ☐ GRANTED ☐ DENIED ☐ GRANTED IN PART ☐ OTHER
3. CHECK IF APPROPRIATE: ........................ ☐ SETTLE ORDER   ☐ SUBMIT ORDER
                                                 ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **MADDEN** Justice

PART **11**

JOHN WILEY & SONS INC
-v-
PIERRE GROSSMAN

INDEX NO. **650375/13**

MOTION DATE _____

MOTION SEQ. NO. **6**

The following papers, numbered 1 to ____, were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is **decided in accordance with the annexed memorandum decision and order.**

Dated: **May 13, 2011**

HON. JOAN A. MADDEN, J.S.C.
J.S.C.

1. CHECK ONE: .................................................. ☐ CASE DISPOSED    ☐ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...........................MOTION IS: ☐ GRANTED  ☐ DENIED  ☐ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ................................................ ☐ SETTLE ORDER    ☐ SUBMIT ORDER
   ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE _____
FOR THE FOLLOWING REASON(S): _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, PART 11
-----------------------------------------------------------------X
JOHN WILEY & SONS, INC., WILEY PERIODICALS,
INC. and BLACKWELL PUBLISHING, LTD,

                                                    Plaintiffs,        Index No.:650375/13

-against-

PIERRE GROSSMAN, CAMILLE GROSSMAN,
ROBERTO SAAD, SUSANA ISAY a/k/a
SUSANA MARTA ISAY SAAD, FABIO
SAAD, FELIPE GARCIA, JOAO HECKER and
RUTH PFINGST,

                                                 Defendants.
-----------------------------------------------------------------X
JOAN MADDEN, J.:

      Pursuant to an interim order, a hearing was held in connection with the motion by defendant Pierre Grossman to vacate, pursuant to CPLR 5240 and 5222, a restraining notices served by plaintiff upon JPMorgan Chase Bank, NA d/b/a Chase the (Chase) restraining certain bank accounts in the name of non-party International Bibliographic Information Service Corp. (IBIS).

      The complaint alleges that Camille Grossman, Pierre's Grossman's wife, and others worked with Grossman to wrongfully acquire discounted subscriptions from plaintiff Wiley. When Mr. Grossman failed to answer the complaint, on or about March 18, 2015, a default judgment was entered against him in the amount of $261,984.90.[1] On or about December 15, 2015, plaintiffs served restraining notices upon Chase seeking to restrain multiple bank accounts

---

[1] On January 29, 2015, this court vacated to default judgment entered against Grossman. However, the Appellate Division, First Department reversed on November 2, 2015, the default judgment was reinstated.

1

in the name of IBIS, which corporation is owned by Mr. Grossman and his wife, Camille Grossman. However, at the hearing, evidence was presented in connection with an IBIS Chase account ending in x5382 (the Restrained Account), which is the account referenced herein.

In support of the motion, Mr. Grossman argues that restraining notices should be vacated, asserting that IBIS and Camille Grossman are not parties to this action; that the accounts were used to pay IBIS' business transactions; that although he is a shareholder in IBIS, he is not owed any debt by IBIS; that he does not have any interest in IBIS's bank accounts and has never used the accounts to pay his personal expenses or to conduct his personal affairs.

In opposition to this motion, plaintiffs assert that IBIS was one of the companies allegedly used by Mr. Grossman to wrongfully obtain the subscriptions, and that Mr. Grossman used IBIS' restrained account to pay for his and his wife's personal expenses, including paying condominium common charges and fees in connection with a unit owned by Mr. Grossman and his wife.

The central issue on the motion and at the hearing was whether plaintiffs have established a sufficient basis to restrain the corporate accounts of IBIS based on a judgment obtained against Grossman personally.

CPLR 5222(b) authorizes a judgment creditor to serve a restraining notice upon one who, at the time of service

> owes a debt to the judgment debtor or obligor is in the possession or custody of property in which he or she knows or he or she has reason to believe the judgment debtor or obligor has an interest, or if the judgment creditor... has stated in the notice that a specified debt is owed by the person served to the judgment debtor or obligor or that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served. ... Such a person is forbidden to make or suffer any sale,

2

> assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except ... upon direction of the sheriff ... or pursuant to an order of the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs.

The First Department has held that where "the evidence demonstrates that a judgment debtor regularly has used another's bank account as a 'recipient' of the debtor's personal assets or as a source for payment of the debtor's expenses, the account may be restrained under [5222(b)]. Bingham v. Zolt, 231 AD2d 479, 479 (1st Dept 1996), citing ERA Mgt. v Morrison Cohen Singer & Weinstein, 199 AD2d 179 (1st Dept 1993). Courts have held that restraining notices were properly issued with respect to third parties under the following circumstances: Bingam v Zolt, supra, (where the debtor's personal funds were deposited in his wife's account; where the debtor used funds from corporate accounts to pay his legal expenses; and where multi-thousand dollar checks were drawn by the individual debtor on the corporate debtor's account and made payable to one of the corporate intervenors); Blue Giant Equipment Corp., v Tec-Ser, Inc., et al., 92 AD2d 630) (3rd Dept 1983)( restraining notices properly served on litigants in actions in connection with the corporate debtor's accounts receivable); Plaza Hotel Associates v Wellington Associates, Inc., 84 Misc2d 777 (Sup Ct. NY Co 1975)(account of a partnership which was the successor to the corporate judgment debtor where one of the two owners of the corporate debtor testified that the corporate defendant was still in business under the partnership, and where properties were transferred without consideration between entities wholly owned or controlled by the two owners of the defendant corporation). On the other hand, it has been held that restraining notices are not properly issued as to third parties who are alleged to be alter egos

3

of a judgment debtor in the absence of adjudication of their alter ego status and liability for the underlying debt. <u>JSC Foreign Economic Assn Technosttroyexport v International Development and Trade Services</u>, Inc., 295 FSupp2d 366 (SD NY 2003); see <u>Market Meats, Inc., v Butchery NYC, Inc.</u>, 2015 WL 725417 (Sup CT Bronx Co 1-16-15)(Suaarez,J).

Applying these principles, and based upon the credible evidence at the hearing, I conclude that plaintiffs have established that Mr. Grossman has an interest in the Restrained Account and that the retraining notice was properly issued as to that account. Specifically, the following evidence admitted at the hearing supports the finding that funds from the restrained account were used by Mr. Grossman to pay for personal expenses. Mr. Grossman used the Restrained Account ending in x5382 to pay to for common charges and fees, in connection with a condominium unit he and his wife jointly owned at 100 Hilton Avenue, Garden City, New York (Condominium Unit); his personal legal fees of over $90,000 with respect to this action; a $6,000 fee, which this court imposed as a condition for vacating Mr. Grossman's default in answering the complaint; and various credit card payments. The condominium charges and fees included payments from the Restrained Account for electricity, capital assessments, garage fees and property taxes. Notably, the garage fees were in connection with a 2015 Lexus which Mr. Grossman owns and which is registered in his name. Moreover, Mr. Grossman testified that due to the freezing of the account, he and his wife were without funds to pay for transportation, food and other expenses in New York.[2] In addition, evidence showed that Mr. Grossman's personal assets were, in part, the source of funds in the Restrained Account. In this connection, Mr. Grossman testified he was the

---

[2] Mr. Grossman also admitted that he made this statement in a letter dated December 31, 2015 which he sent to the federal judge presiding over an action in which he was a defendant encaptioned <u>Elsevier Inc., v Grossman,</u> 12 Civ 5121 (SDNY)(KPF).

4

personal beneficiary of an account at HSBC in the name of M Publishing, another company owned by the Grossmans, and that on multiple occasions he transferred funds totaling over $227,000 from this account into the Restrained Account.

In reaching the above conclusion, I reject Mr. Grossman's testimony that he did not use the funds in the Restrained Account for personal expenses,; that the funds belong exclusively to IBIS; that his use of the funds in the account and his use of the Condominium Unit was solely related to business of IBIS; and that the Lexus was used by him and employees of PTI, another company owned by Mr. Grossman, only for business purposes.

At the outset, I note that the $90,000 in legal fees and $6,00 fee with respect to vacatur of the default, are in connection with fees where Mr. Grossman was personally sued and are not properly chargeable to IBIS. Thus, the use of funds from the Restrained Account constitutes their use for Mr. Grossman's personal expenses.

In connection with the use of funds for expenses for the Condominium Unit, Mr. Grossman testified he spends most of his time at his home in Brazil, that the Condominium Unit is IBIS's office, and that his only use of the unit is in connection with IBIS' business. However, the unit is owned by Mr. Grossman and his wife, and Mr. Grossman fails to offer any explanation for such ownership. Nor does Mr. Grossman provide documentary support or detail his use of the unit for business purposes, other than in connection with court appearances for this action and for an action pending in federal court. However, his appearances in both actions were in connection with lawsuits commenced against him personally. As to Mr. Grossman testimony that the unit is IBIS's office, this testimony is undermined by an answer Mr. Grossman filed and served in

5

federal court where he denied that "IBIS has any place of business in...Garden City New York."[3]

In regard to the use of the Condominium Unit for IBIS' business, according to Mr. Grossman, it is a New York Corporation, formed over 30 years ago to facilitate the business of PTI, another company owned by Mr. Grossman. PTI is a subscription agency that sells subscriptions to technical and medical journals to government agencies and private entities which are largely situated in Brazil. Since most of the publishers are located in the United States, and since a fee of between $50 and $100 is charged for each transaction to convert Brazilian money to dollars, the transactions are pooled, and converted weekly or monthly, so that only one fee is charged for the pooled transactions. Mr. Grossman further testified, that while most subscriptions today are digital, journals and other publications are sent to IBIS at the Condominium Unit's Garden City address, where Denise Paccione, the wife of the concierge, Frank Paccione, accepts shipments for IBIS and mails these shipments to Brazil. Contrary to this testimony, invoices introduced at the hearing, show that as of July 15, 2015, the shipments were sent to the Paccione's Bellmore, New York address. Thus, this evidence shows that as July 15, 2015, journals and publications were not sent to IBIS at the Condominium Unit's Garden City address, and even if it is assumed that before July 15, 2015, the publications were sent to that address, it does not establish any business purpose for the use of the condominium by the Grossmans.

In reaching the above conclusions about Mr. Grossman's use of the funds in the Restrained Account to pay personal expenses, I have considered Mr. Grossman's testimony, that he has no personal bank accounts nor personal credit cards. In evaluating Mr. Grossman's

---

[3] Elsevier Inc., v Grossman, 12 5121 (SDNY)(KPF)(Doc No 58 at ¶ 12(Pierre Grossman's Answer with Affirmative Defenses and Jury Demand).

credibility, I have considered the inconsistencies discussed above, as well as his testimony and questionnaire responses where he replied that his only assets exceeding $1,000 in value were the Condominium Unit, the Lexus and his interest in IBIS, and failed to mention his interest in M Publishing or PTI.

I find that the foregoing testimony and evidence that Mr. Grossman's personal assets were used to deposit funds into the Restrained Account and that he used the account to pay for personal expenses, supports the conclusion that Mr. Grossman has an interest in the funds in the Restrained Account, and that this interest is sufficient to deny the motion to vacate the restraining notice. To the extent that Mr. Grossman has argued that plaintiffs must establish that IBIS is the alter ego Mr. Grossman, the cases cited for that proposition are distinguishable. As noted above, <u>JSC Foreign Economic Assn Technosttroyexport v International Development and Trade Services</u>, Inc., supra, and <u>Market Meats, Inc., v Butchery NYC, Inc.</u>, supra, merely stand for the proposition that where a restraining notice is served based on an alter ego theory, there must be an adjudication as to this status prior to the issuance of such restraint. Under the circumstances here, based on the foregoing evidence, plaintiffs need not prove the viability of an alter ego theory to oppose the motion to vacate.

Accordingly, it is

ORDERED that defendant Pierre Grossman's motion to vacate the restraining notice dated December 15, 2015 served by plaintiffs upon JPMorgan Chase Bank, NA d/b/a Chase Bank with respect to the account ending in x6382 in the name of International Bibliographic Service Corp. is denied.

Dated: May 13, 2016

_____
J.S.C.

**HON. JOAN A. MADDEN**
**J.S.C.**

7

[FedEx Expanded Service International Air Waybill, Customs Copy, marked "Extremely Urgent"]

- Sender's Name: P. GROSSMAN
- Sender's FedEx Account Number: 1775743143
- Phone: 55-11-315-2555
- Company: PII
- Address: R. Ia Peixoto Gomide ...
- City: PAULO
- State/Province: SAO PAULO
- Country: BRAZIL
- Postal Code: 1401-001

- Recipient's Name: PRI?ce OFFIce
- Phone: 1-212-305-0175
- Company: US DISTRICT COURT / SOUTHERN DIST NY
- Address: 500 PEARL STREET
- Address: Room 230
- City: NEW YORK
- State: NY

Express Package Service — FedEx Intl. Priority
Packaging — FedEx Envelope
Special Handling — HOLD at FedEx Location