UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
: 

ELSEVIER INC., ELSEVIER B.V.,     :
ELSEVIER LTD., and ELSEVIER MASSON  :
SAS,    :
  :
             Plaintiffs,  :
  :
          v.  :
  :
PIERRE GROSSMANN, IBIS CORP.,  :
PUBLICAÇÕES TÉCNICAS  :
INTERNACIONAIS, and JOHN DOE  :
Nos. 1-50,  :
  :
         Defendants. :
  :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 8, 2017

12 Civ. 5121 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

On June 29, 2012, Plaintiffs Elsevier Inc., Elsevier B.V., Elsevier Ltd.,

and Elsevier Masson SAS (collectively, "Plaintiffs" or "Elsevier") brought this

action against Defendants Publicações Técnicas Internacionais ("PTI"), IBIS

Corp. ("IBIS"), and Pierre Grossmann ("Grossmann" and, together with PTI and

IBIS, "Defendants"), alleging that Defendants had operated a scheme to

(i) obtain subscriptions to the journals sold by Plaintiffs at discounted rates

and (ii) to resell those journal subscriptions to institutions otherwise obligated

to pay full price for them.  On May 8, 2015, the Court entered default judgment

against PTI and IBIS.  Grossmann proceeded to trial.

On January 14, 2016, a jury determined that Grossmann had violated

the Racketeer Influenced and Corrupt Organizations Act ("RICO" or the "Act"),

18 U.S.C. §§ 1961-68, but that he had not engaged in a conspiracy to violate

the Act. The jury further determined that Grossman had breached one or more contracts with Plaintiffs and that he had converted Plaintiffs' property. The jury awarded Plaintiffs $11,108 in damages for the RICO violation and $6,201 for the contractual breaches, but found that Plaintiffs had not been damaged by the conversion of their property.

Post-trial, Grossmann filed a motion for judgment as a matter of law on the RICO claim (the "RICO Motion"). The following day, Plaintiffs filed: (i) a motion for judgment as a matter of law on the question of RICO damages or, in the alternative, for a new trial solely on the question of RICO damages (the "Damages Motion"); (ii) a motion for an award of damages and an entry of final default judgment against PTI and IBIS (the "Motion for Final Default Judgment"); and (iii) a motion for attorneys' fees and costs under 18 U.S.C. § 1964(c) (the "Fee Motion"). In an Opinion and Order issued on August 4, 2016 (the "August 4 Opinion"), the Court granted the RICO Motion, but gave Plaintiffs leave to request a new trial at which they could attempt to establish RICO liability against Grossmann. The Damages Motion was denied; the Motion for Final Default Judgment granted in part and denied in part; and the Fee Motion denied without prejudice.

On February 15, 2017, Plaintiffs filed a motion (i) for a new trial against Grossmann pursuant to Federal Rule of Civil Procedure 59 on the issue of domestic injury with respect to Plaintiffs' RICO claims and (ii) for leave to amend Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil

Procedure 15 to set forth supplemental, domestic-injury allegations. For the reasons outlined below, this motion is granted.

## BACKGROUND[1]

### A.    Factual and Procedural Background Prior to August 4, 2016

The bulk of the background relevant to this case has not changed in the months since the Court outlined it in the August 4 Opinion. Therefore, to avoid redundancy, the Court here incorporates by reference the factual and procedural background statements set forth in that Opinion. *See Elsevier, Inc.* v. *Grossman*, 199 F. Supp. 3d 768, 774-78 (S.D.N.Y. 2016), *order clarified sub nom. Elsevier Inc.* v. *Grossmann*, No. 12 Civ. 5121 (KPF), 2016 WL 7077037 (S.D.N.Y. Dec. 2, 2016).

### B.    Subsequent Procedural Background

In its August 4 Opinion, the Court granted Grossmann's RICO Motion, and denied Plaintiffs' Damages Motion. (Dkt. #222). However, the Court gave Plaintiffs leave (i) to request a new trial at which they could establish RICO liability against Grossmann and (ii) to move for leave to amend the Amended Complaint. (*Id.*).

On February 15, 2017, Plaintiffs filed a motion (i) for a new trial against Grossmann pursuant to Federal Rule of Civil Procedure 59 on the issue of

---

[1]    For convenience, the Court will refer to Plaintiffs' brief in support of their motion for a new trial and for leave to amend the Amended Complaint as "Pl. Br." (Dkt. #300); Grossmann's emails opposing Plaintiffs' motion as "Def. February Opp." (Dkt. #302) and "Def. March Opp." (Dkt. #318); and Plaintiffs' letter reply as "Pl. Reply" (Dkt. #322). The Court will refer to the Declaration of Maribel Burgos filed in support of Plaintiffs' motion as "Burgos Decl.," and the exhibits attached thereto by their letter designation as "Burgos Decl., Ex. [X]" (Dkt. #298).

domestic injury with respect to Plaintiffs' RICO claims and (ii) for leave to amend Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 15 to set forth domestic-injury allegations to supplement their RICO and RICO conspiracy claims against PTI and IBIS.  (Dkt. #297-300).  Grossmann opposed Plaintiffs' motion in two emails, the first of which he sent to the Court on February 20, 2017 (Dkt. #302), and the second of which he sent to Plaintiffs on March 8, 2017 (Dkt. #318).  Plaintiffs filed a letter reply on March 20, 2017.  (Dkt. #322).

## DISCUSSION

### A. Plaintiffs' Motion for a New Trial with Regard to Domestic Injury Is Granted

#### 1. Applicable Law

For clarity, the Court here will revisit the legal standards it applied in the August 4 Opinion and describe any subsequent changes thereto.

##### a. Federal Rule of Civil Procedure 59

Federal Rule of Civil Procedure 59 gives a court discretion to "grant a new trial on all or some of the issues" in a case after a jury trial has been held "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  The Second Circuit has acknowledged that an "intervening change in controlling law" can be an appropriate basis for granting a new trial under Rule 59.  *LiButti* v. *United States*, 178 F.3d 114, 119 (2d Cir. 1999); *see also Sass* v. *MTA Bus Co.*, 6 F. Supp. 3d 229, 238 (E.D.N.Y.) (granting a new trial based on a change in the governing law), *adhered to on reconsideration*, 6 F. Supp. 3d 238 (E.D.N.Y.

4

2014).  *But see LiButti*, 178 F.3d at 119 ("Usually, an intervening change in controlling law is a basis for an amendment of the judgment, rather than a new trial.").  The Second Circuit has also recognized that courts have discretion to grant a new trial where doing so is necessary to prevent a miscarriage of justice.  *See Hygh* v. *Jacobs*, 961 F.2d 359, 365 (2d Cir. 1992) (noting that trial court has discretion to grant Rule 59 motions to avoid verdict constituting "a miscarriage of justice" (internal quotation mark omitted) (quoting *Smith* v. *Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988)); *Fioto* v. *Manhattan Woods Golf Enters., LLC.*, 304 F. Supp. 2d 541, 545 (S.D.N.Y. 2004) (same), *aff'd sub nom. Fioto* v. *Manhattan Woods Enters. LLC*, 123 F. App'x 26 (2d Cir. 2005) (summary order).

### b.    The Racketeer Influenced and Corrupt Organizations Act

### i.    RICO Generally

Congress enacted RICO to combat "racketeering activity."  *RJR Nabisco, Inc.* v. *European Cmty.*, __ U.S. __, 136 S. Ct. 2090, 2096-97 (2016).  A "pattern of racketeering activity" occurs when an individual commits two or more predicate offenses within a ten-year period, *see* 18 U.S.C. § 1961(5); those predicate offenses are related to one another, *see H.J. Inc.* v. *Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); and the predicates "amount to or pose a threat of continued criminal activity," *id.*

The heart of RICO is 18 U.S.C. § 1962, which creates four substantive prohibitions against "racketeering activity."  This case concerns the third and fourth prohibitions.  The third prohibition reads:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

*Id.* § 1962(c). The fourth prohibition makes it unlawful for anyone to conspire to violate any part of § 1962. *Id.* § 1962(d).

While RICO establishes criminal penalties for violations of § 1962, *see* 18 U.S.C. § 1963, it also creates a private right of action for individuals who are harmed by racketeering activity, *see id.* § 1964. Section 1964 provides, in relevant part, that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]" *Id.* § 1964(c).

### ii.    RICO's Extraterritoriality

In *RJR Nabisco, Inc.* v. *European Community*, __ U.S. __, (2016), the Supreme Court considered RICO's extraterritoriality. Affirming the strength of the judiciary's presumption against extraterritoriality, the Court outlined the two-step process according to which a court must analyze that presumption's applicability to a given statute. *RJR Nabisco*, 136 S. Ct. at 2100-01. At the first step, a court asks "whether the presumption against extraterritoriality has been rebutted — that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Id.* at 2101. The court "must ask

this question regardless of whether the statute in question regulates conduct, affords relief, or merely confers jurisdiction." *Id.* If the statute applies extraterritorially, then the court's inquiry is at its end. *See id.*

However, if there is nothing in the statute to rebut the presumption against extraterritoriality, the court must proceed to the second step of the analysis, which requires the court to consider whether the case involves a domestic or extraterritorial application of the relevant law. *RJR Nabisco*, 136 S. Ct. at 2101. A court "do[es] this by looking to the statute's 'focus'":

> If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*Id.*; *accord Matter of Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 829 F.3d 197, 216-17 (2d Cir. 2016).

In *RJR Nabisco*, the Supreme Court applied this two-step framework to determine the extent to which the "substantive prohibitions in § 1962 may apply to foreign conduct." 136 S. Ct. at 2101. At step one, the Court found that § 1962 "gives a clear, affirmative indication that [it] applies to foreign racketeering activity — but only to the extent that the predicates alleged in a particular case themselves apply extraterritorially." *Id.* at 2102. Thus, for any crime to constitute a proper predicate act under RICO, the crime must involve: (i) a violation of a statute that applies extraterritorially *or* (ii) domestic conduct

that is relevant to the "focus" of a domestic criminal statute. *See id.* at 2101-02.

After considering the extraterritorial reach of § 1962, the Supreme Court went on to decide whether § 1964 — which creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962" — also applies extraterritorially. *RJR Nabisco*, 136 S. Ct. at 2106 (quoting 18 U.S.C. § 1964). The Court explained that it "separately appl[ied] the presumption against extraterritoriality to RICO's cause of action despite [its] conclusion that the presumption ha[d] been overcome with respect to RICO's substantive prohibitions." *Id.* And "[n]othing in § 1964(c) provides a clear indication that Congress intended to create a private right of action for injuries suffered outside of the United States." *Id.* at 2108. Thus, the Court concluded, "[s]ection 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries." *Id.* at 2111. The Court acknowledged that "[t]he application of this rule in any given case will not always be self-evident," but declined to articulate a definition of a "domestic injury to business or property," leaving that question for another case. *Id.*

### iii.    Domestic Injury

Courts to consider this question left open by *RJR Nabisco* have diverged in their analysis thereof.[2] *See City of Almaty, Kazakhstan* v. *Ablyazov*, No. 15

---

[2]    These courts have all been district courts; the definition of a "domestic injury" for purposes of RICO is "an issue that has not yet been squarely addressed by any Court of

Civ. 5345 (AJN), 2017 WL 1424326, at *2 (S.D.N.Y. Apr. 20, 2017) ("[C]ourts both within this District and around the country have adopted varying approaches to assessing the novel domestic-injury question that could at least potentially yield differing determinations."). Indeed, "two separate, and apparently conflicting, lines of reasoning have emerged from these opinions. The first line ... focuses on where the alleged injury was suffered. The second line ... focuses on where the conduct occurred that caused the injury." *Cevdet Aksüt Oğullari Koll. Sti* v. *Cavusoglu*, Civ. No. 2:14-3362, 2017 WL 1157862, at *4 (D.N.J. Mar. 28, 2017) (collecting cases).[3]

This Court has taken the former approach. In its August 4 Opinion, the Court concluded that

> in the RICO context, courts should employ a more flexible inquiry to determine where an injury occurs. First, the court should determine what type of injury a RICO plaintiff has suffered. If the plaintiff has suffered an injury to his or her business, the court should ask where substantial negative business consequences occurred. By contrast, if the plaintiff has suffered an injury to his or her property, the court should ask where the plaintiff parted with the property or where the property was damaged.

---

Appeals." *City of Almaty, Kazakhstan* v. *Ablyazov*, No. 15 Civ. 5345 (AJN), 2017 WL 1424326, at *2 (S.D.N.Y. Apr. 20, 2017).

[3] "Another district court has arguably developed a third approach, which borrows from a test used to determine whether the federal antitrust statutes may reach anticompetitive behavior occurring outside of the U.S. and asks whether the RICO defendant's 'conduct is intended to or has produced substantial effects in the United States.'" *City of Almaty, Kazakhstan* v. *Ablyazov*, No. 15 Civ. 5345 (AJN), 2016 WL 7756629, at *8 n.9 (S.D.N.Y. Dec. 23, 2016) (quoting *Union Comm. Servs. Ltd.* v. *FCA Int'l Ops. LLC*, No. 16 Civ. 10925 (JEL), 2016 WL 6650399, at *4-5 (E.D. Mich. Nov. 10, 2016)), *motion to certify appeal denied*, No. 15 Civ. 5345 (AJN), 2017 WL 1424326 (S.D.N.Y. Apr. 20, 2017). This Court considered such an approach in its August 4 Opinion and expressly rejected it. *See Elsevier, Inc.* v. *Grossman*, 199 F. Supp. 3d 768, 785-86 (S.D.N.Y. 2016), *order clarified sub nom. Elsevier Inc.* v. *Grossmann*, No. 12 Civ. 5121 (KPF), 2016 WL 7077037 (S.D.N.Y. Dec. 2, 2016).

*Elsevier*, 199 F. Supp. 3d at 786. Clearly, the Court's focus was on where an alleged injury was suffered by a RICO plaintiff, rather than where the alleged predicate acts were committed by a RICO defendant. *See id.*

The majority of other courts to consider the question have followed suit. *See Cevdet Aksüt Oğullari Koll. Sti*, 2017 WL 1157862, at *4-5 (collecting cases) ("[M]ost of the courts appear to have focused on where plaintiffs' injuries were felt."). Other courts within this Circuit, for example, have adopted a version of the injury-focused approach derived by analogy to New York State's choice-of-law statute, N.Y. C.P.L.R. § 202. *See Bascuñan* v. *Daniel Yarur ELS Amended ComplaintA*, No. 15 Civ. 2009 (GBD), 2016 WL 5475998, at *4-6 (S.D.N.Y. Sept. 28, 2016); *see also City of Almaty, Kazakhstan* v. *Ablyazov*, No. 15 Civ. 5345 (AJN), 2016 WL 7756629, at *7-9 (S.D.N.Y. Dec. 23, 2016) (adopting *Bascuñan*'s holding that "[t]he appropriate subject of the inquiry required by *RJR Nabisco* is not the location of the ... purportedly injurious conduct but the location where the injury itself arose," though also expressing "hesitation to broadly endorse an absolutist version of the rule that would, for example, categorically preclude foreign corporations with business operations or property interests maintained in the U.S. from bringing RICO actions to recover for injuries to those assets"). Under this approach, a court looks to "where the economic impact of [an] injury was ultimately felt," which is typically the state of a plaintiff's residence or, in the case of a foreign corporation, either where it maintains a principal place of business or its place of incorporation.

*Bascuñan*, 2016 WL 5475998, at *4 (quoting *Deutsche Zentral-Genossenchaftsbank AG* v. *HSBC N. Am. Holdings, Inc.*, No. 12 Civ. 4025 (AT), 2013 WL 6667601, at *6 (S.D.N.Y. Dec. 17, 2013)). Courts "ask two common-sense questions: '[i] who became poorer, and [ii] where did they become poorer.'" *Id.* (quoting *Deutsche Zentral-Genossenchaftsbank AG*, 2013 WL 6667601, at *6).

This approach is similar to that adopted by most courts outside this Circuit. *See, e.g.*, *Cevdet Aksüt Oğullari Koll. Sti*, 2017 WL 1157862, at *5 ("The Court, therefore, concludes that the only relevant inquiry is where Plaintiff's injury occurred — *i.e.* where the impact of Plaintiff's injury was felt — and not where the predicate acts occurred."); *Absolute Activist Value Master Fund Ltd.* v. *Devine*, No. 15-cv-328, 2017 WL 519066, at *19-20 (M.D. Fla. Feb. 8, 2017) ("Defendant is correct to the extent she argues that the focus of the matter is the geographic location of the injury to plaintiffs, not the location of a defendant's wrongful acts"); *Exeed Indus., LLC* v. *Younis*, No. 15 C 14, 2016 WL 6599949, at *3 (N.D. Ill. Nov. 8, 2016) (finding foreign plaintiffs did not suffer a domestic injury because "the injury alleged was not initially suffered by Plaintiffs in the United States, nor have Plaintiffs maintained a United States presence"). A minority of courts elsewhere, however, have looked to the place where the RICO-predicate acts that caused the alleged injury occurred. *See, e.g.*, *Akishev* v. *Kapustin*, No. CV 13-7152 (NLH) (AMD), 2016 WL 7165714, at *8 (D.N.J. Dec. 8, 2016) (finding domestic injury because defendants chose "to operate their fraudulent scheme from New Jersey and Pennsylvania," such that

11

"the locus delecti of the crimes committed is the United States"); *Tatung Co., Ltd.* v. *Shu Tze Hsu*, No. SA CV 13-1743 (DOC) (ANX), 2016 WL 6683201, at \*7-8 (C.D. Cal. Nov. 14, 2016) (declining to follow *Bascuñan* because conduct of defendants so clearly targeted California that "[i]t would be absurd to find that such activity did not result in a domestic injury to Plaintiff").

### 2. Analysis

#### a. The August 4 Opinion's Domestic-Injury Directive

In the August 4 Opinion, the Court applied its domestic-injury analysis to Plaintiffs' evidence at trial and found that neither of Plaintiffs' alleged injuries — the alleged competitive injury to Plaintiffs' business and alleged parting with property under false pretenses — was a "domestic injury" for purposes of RICO. *Elsevier*, 199 F. Supp. 3d at 787-90. The Court considered the strictures of Federal Rules of Civil Procedure 59 and 15, however, and concluded that "it would be permissible to order a new trial on the issue of domestic injury at this juncture." *Id.* at 792. Because the Court did "not believe it would be advisable to hold a second trial unless Plaintiffs [were] capable of introducing more information on the issue of domestic injury" though, it directed Plaintiffs to "renew their Rule 59 motion," but only if that motion were "accompanied by a proffer of the evidence that would be offered at a trial on the issue of domestic injury." *Id.* With regard to Plaintiffs' assertion that they had parted with property under false pretenses, the Court suggested that Plaintiffs' proffer should indicate that Plaintiffs' journals left their control in the United States because they were shipped from the United States and/or

authorized for shipment by Plaintiffs' employees in the United States. *Id.* at 788-90.

### b. Plaintiffs' Proffer and Grossmann's Objections

Plaintiffs renewed their motion for a new trial on February 15, 2017. (Dkt. #297-300). An accompanying declaration thereto "set forth the evidence that Elsevier intends to use to prove that it suffered domestic injury by parting with property under false pretenses." (Pl. Br. 7). This evidence "show[s] that 31 of the 51 subscriptions" at issue in this litigation "were shipped from the United States." (*Id.* (citing Burgos Decl. ¶¶ 7-22, Ex. B-E, K)). Of the remaining subscriptions, Plaintiffs proffer that "the customer service representatives who processed 17 of these orders and authorized the shipment of those journals" were located "in either Orlando, Florida or Saint Louis, Missouri, at the time [they] authorized the shipments." (*Id.* (citing Burgos Decl. ¶¶ 23-42, Ex. F-K)).

Grossmann objects to Plaintiffs' motion and proffer on a variety of bases, many of which are outside the scope of this Opinion. The bulk of Grossmann's objections in the first of his email oppositions, for example, consist of challenges to the credibility of Plaintiffs' witnesses at trial. (Def. February Opp.). Grossmann also alleges that Plaintiffs engaged in "exclusionary practice[s]" and "extortion of Brazilian content providers competitors companies," and that all of Plaintiffs' allegations are false. (*Id.*).

Grossmann offers more specifics in his second opposition. Therein, Grossmann alleges that the "Maribel Burgos declaration is a lie" that was

"invented" by Plaintiffs' counsel and a trial witness. (Def. March Opp.). Grossmann argues that there could never be "a RICO domestic injury" in this case, because there were no shipments or authorizations thereof with regard to physical journals. (*Id.*). Since 2000, Grossmann claims, research institutions, libraries, and universities in Brazil have acquired only access to online journals, *i.e.*, "content they never physically acquire." (*Id.*).

### c. Plaintiffs' Motion for a New Trial with Regard to Domestic Injury Is Granted

As indicated in its August 4 Opinion, the Court believes that it "would be permissible to order a new trial on the issue of domestic injury at this juncture." *Elsevier*, 199 F. Supp. 3d at 792. The Court held that "[u]nder these circumstances, justice demands that Plaintiffs be given some opportunity to introduce evidence regarding the location of their injury." *Id.* Now, Plaintiffs have indicated that at a new trial in this case, they would introduce evidence that all but three of the 51 journals at issue in this case were shipped from and/or authorized to be shipped from within the United States. (Def. Br. 7). The Court finds this proffer satisfactory, and grants Plaintiff's motion for a new trial on the issue of domestic injury.[4]

In reaching this conclusion, the Court has considered and rejected Grossmann's arguments regarding the falsity of Plaintiffs' evidence. Plaintiffs'

---

[4] The Court notes for the benefit of the parties that the standard for domestic injury in this Circuit is still in flux. The Court of Appeals heard argument regarding Judge Daniels's decision in *Bascuñan* v. *Daniel Yarur ELS Amended ComplaintA*, No. 15 Civ. 2009 (GBD), 2016 WL 5475998 (S.D.N.Y. Sept. 28, 2016), on April 28, 2017. In any new trial, the parties will be expected to heed any guidance offered by the Circuit in its resolution of the *Bascuñan* appeal.

proffered evidence, as well as the evidence already introduced at the first trial in this case, establishes that the subscriptions at issue in this case involved print journals, which Plaintiffs now indicate were shipped and/or authorized for shipment from within the United States. Grossmann argues without basis that the signed and sworn Burgos Declaration is fraudulent, offering only his own unsigned and unsworn contentions to prove its invalidity. (*See* Def. March Opp.). This is insufficient. Grossmann is welcome to challenge the validity of Plaintiffs' evidence at the new trial in this case; such credibility determinations are properly the province of a jury.

**B.     Plaintiffs' Motion to Amend Is Granted**

       **1.     Applicable Law**

              **a.     Federal Rules of Civil Procedure 55(c) and 60(b)**

Different rules govern a court's consideration of entries of default and default judgments. Federal Rule of Civil Procedure 55 dictates that a "court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) permits a court to "relieve a party or its legal representative from a final judgment" for certain enumerated reasons, including because "the judgment is void; … or applying it prospectively is no longer equitable," or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

"In considering whether to relieve a party of a default, a district court must consider three factors: [i] whether the default was willful; [ii] whether setting the default aside would prejudice the adversary; and [iii] whether a

meritorious defense is presented." *Swarna* v. *Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010); *accord Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund* v. *Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015). A court may also consider "[o]ther relevant equitable factors ... , for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.* v. *Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "Although the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment, because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Id.* (citation omitted).

### b.      Federal Rules of Civil Procedure 15 and 16

Federal Rule of Civil Procedure 15(a) governs pretrial amendments of the pleadings. Rule 15(a)(2) permits a party to "amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts are to "freely give leave when justice so requires." *Id.*; *see also, e.g., McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *Otegbade* v. *N.Y.C. Admin. for Children Servs.*, No. 12 Civ. 6298 (KPF), 2015 WL 851631, at *2 (S.D.N.Y. Feb. 27, 2015). "This permissive standard is consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'" *Williams* v. *Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam) (quoting *New York* v. *Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

However, where amendment is sought after a court "has already filed a scheduling order that limits the parties' ability to amend the pleadings, 'the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement in Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.'" *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (quoting *Grochowski* v. *Phx. Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)); *see also* Fed. R. Civ. P. 16(b)(4). "Whether good cause exists requires the court to inquire into the 'diligence of the moving party.'" *Gorman*, 2014 WL 7404071, at *2 (quoting *Holmes* v. *Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). A court "also may consider other relevant factors, including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *see also Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.").

Under Rule 15 or 16, leave to amend may be denied if the amendment would be futile. *See, e.g., Knife Rights, Inc.* v. *Vance*, 802 F.3d 377, 389 (2d Cir. 2015). Amendment is futile if the "amended portion of the complaint would fail to state a cause of action." *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner*, 496 F.3d at 244 (holding that amended complaint must be "sufficient to withstand a motion to dismiss under

[Federal Rule of Civil Procedure] 12(b)(6)"). Leave to amend may also be denied "when a party has been given ample prior opportunity to allege a claim," *De Jesus* v. *Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996), or "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant," *Cerni* v. *J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 543-44 (S.D.N.Y. 2016) (internal quotation mark omitted) (quoting *Kenney* v. *Clay*, 172 F. Supp. 3d 628, 643 (N.D.N.Y. 2016)).

### 2. Analysis

#### a. The Default Judgment Against PTI and IBIS as to Liability on Plaintiffs' RICO and RICO Conspiracy Claims Is Set Aside

As explained in the August 4 Opinion and as relevant here, IBIS and PTI defaulted for a second time in this action in early 2015. (*See* Dkt. #55, 65-66). On April 7, 2015, this Court issued a second Order to Show Cause why default judgment should not be entered against the two corporate Defendants. (Dkt. #70). And following a hearing on May 8, 2015, the Court "ordered, adjudged[,] and decreed that Plaintiffs have judgment against [D]efendants IBIS and PTI as to liability on those claims in Plaintiffs' Amended Complaint remaining after the Court's January 5, 2015 Opinion and Order." (Dkt. #80 (capitalization omitted)). The Court deferred an inquest on damages, however, "until a disposition of the claims against defendant Pierre Grossman[n]." (*Id.*).

After Grossmann's trial, Plaintiffs moved for the entry of damages, prejudgment interest, and a final default judgment against PTI and IBIS. (Dkt.

#187-88).  Typically, such a motion is not necessary because a default judgment is a final judgment that can be appealed.  *Swarna*, 622 F.3d at 140.  But where a court's entry of default judgment is "conditional" on the resolution "of the proper amount of damages" at a damages inquest, it "should more appropriately be understood as an entry of default."  *Id.*  The Second Circuit therefore has directed that "the entry of a default judgment conditional on an inquest on damages is an interlocutory act and therefore not ordinarily appealable[.]"  *Id.*

In the August 4 Opinion, the Court found that Plaintiffs could not obtain final default judgment on the RICO claim or the RICO conspiracy claim brought against PTI and IBIS because the Amended Complaint did not plead a domestic injury to business or property, such that the Amended Complaint did not state a RICO claim.  *Elsevier*, 199 F. Supp. 3d at 794-95.  Because "Plaintiffs [had] not yet been to trial against PTI and IBIS" though, the Court declined to "dismiss the RICO and RICO conspiracy claims against PTI and IBIS outright."  *Id.* at 795.  Instead, the Court permitted Plaintiffs to file "for leave to amend their pleadings (against PTI and IBIS) to allege domestic injury to business or property."  *Id.*  Plaintiffs did so on February 15, 2017.  (Dkt. #297-300).

Plaintiffs did not move to set aside the existing default judgment.  However, Federal Rule of Civil Procedure 55 dictates that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).  Because "Rule 55(c) ... does not refer to a motion," it has been interpreted to permit courts to "set aside an

19

entry of default *sua sponte*, for good cause." *Negrin* v. *Kalina*, No. 09 Civ. 6234 (BSJ) (KNF), 2012 WL 4074992, at *2 (S.D.N.Y. Sept. 11, 2012). Rule 60(b), by contrast, permits a Court to vacate a default judgment only "[o]n motion and just terms." Fed. R. Civ. P. 60(b).

Accordingly, the Court considers *sua sponte* whether its conditional default judgment, properly considered an entry of default, against Defendants PTI and IBIS should be set aside for good cause. *See* Fed. R. Civ. P. 55(c). The Court finds that it should be. There is no dispute that PTI and IBIS willfully defaulted. However, events subsequent to their default lead this Court to believe that the conditional default judgment against these Defendants cannot stand. In the August 4 Opinion, for example, the Court determined that "the Amended Complaint does not state a RICO claim." *Elsevier*, 199 F. Supp. 3d at 795. The Court believes therefore that PTI and IBIS have a meritorious defense in this action as currently pleaded: They cannot be held liable on Plaintiffs' RICO and RICO conspiracy claims because Plaintiffs have failed to plead their claims adequately. Indeed, as the Court recognized in the August 4 Opinion, the Court "cannot enter final judgment based on a defective pleading." *Id.* (citing *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds* v. *Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (explaining that "a party's default is deemed to constitute a concession of all well pleaded allegations of liability")). Maintaining the entry of default in these circumstances would surely "bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96.

Alternatively, vacating the default judgment against PTI and IBIS will not prejudice either side. It is in the interests of Plaintiffs, which entities seek to amend their pleadings against these parties, and it does not prejudice PTI and IBIS, which entities have chosen not to participate in these pleadings for over two years. The Court's conditional default judgment against Defendants PTI and IBIS with regard to their RICO and RICO conspiracy claims is therefore set aside.

### b. Plaintiffs Are Granted Leave to File a Second Amended Complaint as to PTI and IBIS

Good cause also supports Plaintiffs' motion to amend. Courts in this Circuit have found good cause to support amendment when plaintiffs have diligently sought leave upon a change in controlling law. *See, e.g.*, *Syntel Sterling Best Shores Mauritius Ltd.* v. *Trizetto Grp., Inc.*, No. 15 Civ. 211 (LGS) (RLE), 2016 WL 5338550, at *3 (S.D.N.Y. Sept. 23, 2016) (citing *McGuire* v. *Warren*, 207 F. App'x 34, 36-37 (2d Cir. 2006) (summary order) (permitting plaintiff to amend complaint to meet change in applicable law since complaint was filed)); *Woodworth* v. *Erie Ins. Co.*, No. 05 Civ. 6344 (CJS), 2009 WL 1652258, at *3 (W.D.N.Y. June 12, 2009*), report and recommendation adopted as modified*, No. 05 Civ. 6344 (CJS), 2009 WL 3671930 (W.D.N.Y. Oct. 29, 2009) ("The 'good cause' standard may be satisfied by a showing that the substantive law changed, or that the moving party discovered new evidence, following the scheduling deadline."). *But see Grochowski*, 318 F.3d at 86 (finding the standard was not met where party delayed inexecusably for over one year following a change in the law).

Here, Plaintiffs have diligently sought leave to amend upon a change in RICO law. RICO law regarding domestic injury changed on June 20, 2016, long after the Rule 16 scheduling order's May 9, 2015 deadline for motions to amend the pleadings. And Plaintiffs promptly sought leave to amend their pleadings following the Court's issuance of the August 4 Opinion. Plaintiffs' diligence in addressing the intervening change in RICO law counsels in favor of permitting amendment.

Consideration of other relevant factors favors the same result. First, permitting an amendment at this stage in the litigation will not prejudice PTI or IBIS, because neither PTI nor IBIS has participated in this case since 2014. As is particularly relevant here, these entities have not opposed Plaintiffs' motion for leave to amend. Amendment therefore is unlikely to cause Defendants to expend resources in discovery or trial preparation or to delay significantly the resolution of this case. *See Ruotolo* v. *City of N.Y.*, 514 F.3d 184, 192 (2d Cir. 2008). Second, Plaintiffs' amendment will not be futile. The "amended portion of the complaint" will not "fail to state a cause of action," but rather will correct those portions of the Amended Complaint that *currently* fail to state a cause of action. *Parker*, 204 F.3d at 339. Third, Plaintiffs have not been given "ample prior opportunity to allege" their domestic injury. *De Jesus*, 87 F.3d at 72. This is Plaintiffs' first opportunity to do so. For these reasons, Plaintiffs' motion for leave to amend their pleading with regard to their RICO and RICO conspiracy claims against Defendants PTI and IBIS is granted.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for a new trial as to Defendant Grossmann on the issue of domestic injury is GRANTED. Plaintiffs' motion for leave to file a Second Amended Complaint as to Defendants PTI and IBIS is also GRANTED. The Clerk of Court is directed to terminate the motion pending at docket entry 297.

Plaintiffs must file their Second Amended Complaint **on or before May 30, 2017**. A trial regarding the issue of domestic injury is set to begin at **9:00 a.m. on January 8, 2018**. The Court understands that Plaintiffs may wish to renew or file anew the motions contemplated in their motion papers. (Def. Br. 13 & n.4). The Court reminds Plaintiffs of Rule 4 of its Individual Rules of Practice in Civil Cases, which Rule governs the process Plaintiffs should follow to do so.

SO ORDERED.

Dated:       May 8, 2017
             New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge

*A copy of this Order was mailed by Chambers to:*

Pierre Grossmann
100 Hilton Ave
Unit M23
Garden City, NY 11530
pierreg@pti.com.br
iampierre@yesicandob2b.com