UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
ELSEVIER INC., ELSEVIER B.V.,
ELSEVIER LTD., and ELSEVIER MASSON
SAS,

                                                Plaintiffs,

                       v.

PIERRE GROSSMANN, IBIS CORP.,
PUBLICAÇÕES TÉCNICAS
INTERNACIONAIS, and JOHN DOE
Nos. 1-50,

                                                Defendants.
------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 2, 2017

12 Civ. 5121 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Pending before the Court is a motion for summary judgment filed by Plaintiffs Elsevier Inc., Elsevier B.V., Elsevier LTD., and Elsevier Masson SAS (collectively, "Elsevier"). The motion seeks judgment as a matter of law as to a single element of a claim Elsevier pursued at trial — an element that, due to an intervening change in law during the pendency of the parties' post-trial motions, Elsevier failed to prove at trial. As discussed below, Defendant Pierre Grossmann ("Grossmann") has not filed any opposition. For the reasons that follow, the Court grants Elsevier's motion.[1]

---

[1] For convenience, the Court will refer to the Declaration of Maribel Burgos filed in support of Plaintiffs' Motion as "Burgos Decl." (Dkt. #385, Ex.1), and Plaintiffs' Local Rule 56.1 Statement as "Pl. 56.1" (Dkt. #387). Citations to Plaintiffs' Rule 56.1 Statement incorporate by reference the documents cited therein.

## BACKGROUND

### A. Elsevier's Complaint and the Ensuing Trial

The following section discusses the underlying facts in this case only to the extent necessary to dispose of the instant motion, as the Court has previously engaged in factual recitations at some length. *See Elsevier Inc.* v. *Grossmann*, No. 12 Civ. 5121 (KPF), 2017 WL 3393848, at *1-2 (S.D.N.Y. Aug. 7, 2017); *Elsevier, Inc.* v. *Grossman*, 199 F. Supp. 3d 768, 773-78 (S.D.N.Y. 2016), *order clarified sub nom. Elsevier Inc.* v. *Pierre Grossmann, IBIS Corp.*, No. 12 Civ. 5121 (KPF), 2016 WL 7077037 (S.D.N.Y. Dec. 2, 2016); *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 337-41 (S.D.N.Y. 2015). In brief, Elsevier brought this action to recover for sales of academic journals to Defendants — a Brazilian subscription agency, its related U.S.-facing company, and the principal of both — at discounted rates based on Defendants' representations that they were buying the journals for "valid personal use." *Elsevier, Inc.*, 199 F. Supp. 3d at 774. As it turned out, the subscription agency purchased the journals on behalf of institutions that would have otherwise paid significantly higher prices. *See id.*

After defense counsel withdrew from the case, Elsevier obtained default judgments against the corporate defendants, and Grossmann, proceeding *pro se*, became the lone defendant to proceed to trial on January 11, 2016. *See Elsevier, Inc.*, 199 F. Supp. 3d at 775-76.[2] Elsevier's evidence at trial proved

---

[2] After Elsevier filed the initial complaint in this action, all defendants failed to timely respond and the Clerk of Court thus entered certificates of default against them on June 7, 2013. (Dkt. #8-10). On December 5, 2013, the Court vacated the certificates of

that Grossmann, through his subscription agency Publicações Técnicas Internacionais, fraudulently obtained subscriptions to Elsevier's journals and resold them to Brazilian institutions. *See id.* at 776. The jury thus awarded a verdict to Elsevier, finding Grossmann liable for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), breach of contract, and conversion. *See id.*

**B.     Post-Trial Motion Practice**

Elsevier and Grossmann then participated in extensive post-trial motion practice. Of relevance here, Elsevier moved under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law or, alternatively, for a new trial under Federal Rule of Civil Procedure 59(a) on the amount of RICO damages the jury awarded. (Dkt. #185). For his part, Grossmann moved for judgment as a matter of law as to the RICO claim on the basis that, *inter alia*, the claim was an improper extraterritorial application of RICO. (Dkt. #194, at 5-6). Auspiciously for Grossmann, during the pendency of the post-trial motions, the Supreme Court decided *RJR Nabisco, Inc.* v. *European Community*, holding that

---

default after the defendants appeared through counsel. (*See* Dkt. #29). On January 23, 2015, however, when defense counsel withdrew and Grossmann decided to proceed *pro se*, the corporate defendants did not retain new counsel and thus could not proceed in the action without an attorney. (*See* Dkt. #47, 49, 52, 55). *See also Elsevier, Inc.* v. *Grossman*, 199 F. Supp. 3d 768, 775 (S.D.N.Y. 2016). The corporate defendants thus defaulted, and the Court entered default judgments against them as to liability (but not damages) on Elsevier's Racketeer Influenced and Corrupt Organizations Act ("RICO") claims on May 8, 2015. (Dkt. #80). After trial, Elsevier moved for the entry of damages, prejudgment interest, and a final default judgment against the corporate defendants (Dkt. #187-88), but the Court refused to grant such judgment as to the RICO claim because Elsevier failed to establish liability under RICO, *see Elsevier*, 199 F. Supp. 3d at 794-95. Due to this failure, the Court set aside the default judgments against the corporate defendants on May 8, 2017. (Dkt. #338). After filing an amended complaint, however, Elsevier again obtained certificates of default against the corporate defendants on June 26, 2017. (Dkt. #356, 359-60).

3

"[a] private RICO plaintiff must ... allege and prove a domestic injury to its business or property" to prevail. — U.S. —, 136 S. Ct. 2090, 2106 (2016) (emphasis removed).

After supplemental briefing, the Court held that the trial evidence had not established a domestic injury to Elsevier, nor had Elsevier pled any domestic injury in its complaint. *See Elsevier, Inc.*, 199 F. Supp. 3d at 787-90. In doing so, the Court considered two potential grounds for finding a domestic injury based on Elsevier's trial evidence: (i) a competitive injury to Elsevier's business and (ii) an injury in the form of Elsevier selling its property under false pretenses. *See id.* at 787-88. Yet evidence of ties to the United States under either theory was lacking. Any competitive injury occurred only in Brazil, where Defendants resold the journals, and even if Elsevier had parted with the journals under false pretenses, the evidence did not show that Elsevier had done so in the United States. *See id.* at 787-90.

The Court thus granted Grossmann's motion for judgment as a matter of law as to the RICO claim. *See Elsevier, Inc.*, 199 F. Supp. 3d at 796. But considering the intervening change in law under *RJR Nabisco* and the interplay between Federal Rules of Civil Procedure 59 and 15, the Court allowed Elsevier to file a renewed motion for a new trial and a motion to amend the pleadings to conform to any new evidence, provided that Elsevier proffer the evidence that it would offer at trial on the issue of domestic injury. *Id.* at 790-92. The Court also advised Elsevier that evidence supporting a theory of domestic injury in the form of selling the journals under false pretenses should show that Elsevier

relinquished control of the journals in the United States by shipping them from the States or through its domestic employees' shipment authorizations. *See id.* at 790.

Thus, on February 15, 2017, Elsevier moved for a new trial and to amend its complaint. (Dkt. #297). As the Court reviews more fully below, Elsevier proffered the declaration of Elsevier employee Maribel Burgos, along with supporting exhibits, in which she testified that "48 of the 51 fraudulent subscriptions" involved in the case "were either physically shipped from the United States or were authorized for shipment by an Elsevier employee located in the United States." (Dkt. #298, ¶ 6). Elsevier also submitted a proposed amended complaint. (Dkt. #299, Ex. 1). Finding Elsevier's proffer sufficient to warrant a new trial and good cause for amendment, the Court granted Plaintiff's motions. *See Elsevier Inc.* v. *Grossmann*, No. 12 Civ. 5121 (KPF), 2017 WL 1843298, at *10 (S.D.N.Y. May 8, 2017). Accordingly, on September 15, 2017, Elsevier moved for summary judgment on the issue of domestic injury. (*See* Dkt. #384-87).

## C. Grossmann's Sanctions

A related consideration, with which the parties are well acquainted, is worth mentioning. Over the course of this litigation, Grossmann has engaged in — and received sanctions for — what the Court has previously characterized as "shockingly inappropriate, harassing conduct." *Elsevier Inc.*, 2017 WL 3393848, at *2. At this juncture, the Court need not delve into the details of Grossmann's behavior, save to say that one such sanction was the Court

5

barring him from introducing any evidence on the issue of domestic injury. *See id.* at *5. For this reason, Elsevier's motion for summary judgment is unopposed. In addition, since the Court last sanctioned Grossmann, he has continued to violate the Court's orders, and the final section of this opinion therefore assesses further monetary sanctions against him.

## DISCUSSION

**A.     Summary Judgment**

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003) (citation omitted).

A party's failure to oppose a summary judgment motion does not relieve a district court of the onus to decide whether the movant has met this

6

standard. *See Vt. Teddy Bear Co.* v. *1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *accord Jackson* v. *Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) ("Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed."). In such case, "the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Slep-Tone Entm't Corp.* v. *Golf 600 Inc.*, 193 F. Supp. 3d 292, 295 (S.D.N.Y. 2016) (quoting *Jackson*, 766 F.3d at 194). Therefore, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co.*, 373 F.3d at 244 (citing *Giannullo* v. *City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2013)). In addition, where, as here, the non-moving party is *pro se*, the district court must "examine the record and legal theories in greater detail." *Slep-Tone Entm't Corp.*, 193 F. Supp. 3d at 295 (quoting *City of N.Y.* v. *Gordon*, 155 F. Supp. 3d 411, 419 (S.D.N.Y. 2015)).

**B.     Elsevier Has Established Domestic Injury**

    **1.     Applicable Law**

RICO prohibits "racketeering activity," which includes a variety of substantive offenses. *See RJR Nabisco, Inc.* v. *European Cmty.*, — U.S. —, 136 S. Ct. 2090, 2096-97 (2016). To come within RICO's ambit, a substantive offense must be a piece of a larger "pattern of racketeering activity." *Id.* at

7

2097 (quoting *H.J. Inc.* v. *Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). A plaintiff may bring a private right of action under RICO for harm suffered from a substantive RICO violation. 18 U.S.C. § 1964(c). The jury here based its verdict against Grossmann on a violation of § 1962(c), which prohibits "a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity." *RJR Nabisco*, 136 S. Ct. at 2097; *see also Elsevier, Inc.*, 199 F. Supp. 3d at 779-80.

In *RJR Nabisco*, the Supreme Court considered whether RICO's substantive provisions or, separately, its private right of action, overcome the presumption against extraterritoriality and thus apply to injuries or occurrences outside of the United States. *See* 136 S. Ct. at 2101-06.[3] On the one hand, the Court held that substantive RICO provisions may apply extraterritorially, but only to the extent that the underlying "conduct relevant to the [substantive RICO provision's] focus occurred in the United States." 136 S. Ct. at 2101. On the other hand, as this Court has recognized, RICO's private right of action does not overcome the presumption against extraterritoriality, and a RICO plaintiff must thus prove a "domestic injury." *Elsevier, Inc.*, 199 F. Supp. 3d at 782. The rationale driving this element is the "potential for international friction" in granting a private right of action based on conduct occurring abroad. *RJR Nabisco*, 136 S. Ct.at 2106.

---

[3]  The presumption against extraterritoriality is a canon of statutory construction providing as follows: "Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *See RJR Nabisco, Inc.* v. *European Cmty.*, — U.S. —, 136 S. Ct. 2090, 2100 (2016) (citing *Morrison* v. *Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010)).

To determine whether a plaintiff has satisfied this requirement, courts in this District have adopted a "locus-of-effects approach," which "focus[es] on where the plaintiff felt the effects of the injury" rather than "where the defendant committed the injury-inducing acts." *Dandong Old N.-E. Agric. & Animal Husbandry Co.* v. *Hu*, No. 15 Civ. 10015 (KPF), 2017 WL 3328239, at *11 (S.D.N.Y. Aug. 3, 2017); *see also Yanchukov* v. *Finskiy*, No. 15 Civ. 8128 (JPO), 2017 WL 3491965, at *5 (S.D.N.Y. Aug. 14, 2017) ("[C]ourts in this district have consistently held that determining the location of a RICO injury depends on where the plaintiff suffered the injury — not where the injurious conduct took place." (collecting cases)). And the Second Circuit very recently affirmed this approach in *Bascuñán* v. *Elsaca*, holding that "[w]here the injury is to tangible property ... absent some extraordinary circumstance, the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad." — F.3d —, —, No. 16-3626-cv, 2017 WL 4872400, at *10 (2d Cir. Oct. 30, 2017) (citing *Grossman*, 199 F.Supp.3d at 786).

Considering this analytical framework, the Court previously found Elsevier's evidence of domestic injury lacking because it established neither that Elsevier parted with the journals in the United States, nor that Elsevier had employees in the States who authorized shipments of the journals. *See Elsevier*, 199 F. Supp. 3d at 790. Elsevier's newly proffered evidence fills these evidentiary gaps.

9

**2. Analysis**

The Court thus proceeds to assess the evidence Elsevier has proffered, with due regard to the degree of care required in reviewing an unopposed motion for summary judgment where the non-moving party is proceeding *pro se*. *See Slep-Tone Entm't Corp.*, 193 F. Supp. 3d at 295. As noted above, in support of its motion for summary judgment, Elsevier introduced the declaration of Maribel Burgos, a Customer Service Manager at the company. Her declaration states that "48 of the 51 fraudulent subscriptions were either physically shipped from the United States or were authorized for shipment by an Elsevier employee located in the United States." (Burgos Decl. ¶ 6).

At a more granular level, Burgos explains how Elsevier shipped journals from either printer locations or warehouses depending on the title of the journal, and that the 51 fraudulent journal shipments involved 38 separate journal titles, all but one of which Elsevier handled through two fulfillment systems. (*See* Pl. 56.1 ¶¶ 7-8). The single title that did not travel through those fulfillment systems was shipped from France, but of the remaining 37 titles, 23 shipped from locations in the United States at the time of Burgos's declaration. (*See id.* at ¶¶ 8-11; Burgos Decl. ¶¶ 14-18; Burgos Decl. Ex. B). Two of those titles, however, shipped from Europe for a limited period — one from July 2006 until May 2008, and another from December 2002 until April 2008. (*See* Pl. 56.1 ¶ 12; Burgos Decl. ¶¶ 20-22).

In sum, 31 of the 51 fraudulent subscriptions that Elsevier alleged in its Second Amended Complaint and identified at trial were shipped from a U.S.

location. (Pl. 56.1 ¶ 13). Burgos thus sought to identify the customer service representative who authorized the shipments from Europe and did so for 17 of the remaining 20 subscriptions. (*Id.* at ¶ 14). She found that all 17 were based in the United States. (*See id.* at ¶¶ 15-21). Thus, in total, 48 of the 51 fraudulent subscriptions were linked to the United States by shipping origination, either by physical shipment or authorization by an Elsevier representative.

In this manner, Elsevier relinquished control of the journals in the United States under false pretenses and thereby suffered the effects of Grossmann's conduct in the States. *See Hu*, 2017 WL 3328239, at *11; *cf. City of Almaty, Kaz.* v. *Ablyazov*, 226 F. Supp. 3d 272, 284 (S.D.N.Y. 2016) (refusing to find domestic injury for claims brought by "aliens that [were] not alleged to hold assets or to maintain any operations, instrumentalities, or other presence in the United States"), *motion to certify appeal denied,* No. 15 Civ. 5345 (AJN), 2017 WL 1424326 (S.D.N.Y. Apr. 20, 2017). Even if Elsevier were a foreign entity, this harm would suffice to constitute a domestic injury for RICO purposes. *See Bascuñán*, 2017 WL 4872400, at *5 ("At a minimum, when a foreign plaintiff maintains tangible property in the United States, the misappropriation of that property constitutes a domestic injury."). Indeed, journal sales are Elsevier's stock-in-trade, and by sending those goods to Grossmann (and, in turn, undisclosed Brazilian institutions) through U.S. channels under the false pretense that Grossmann sought the journals for personal use, Elsevier suffered injury in the United States. Elsevier is thus

11

entitled to judgment as a matter of law on its RICO claim, as its only unsatisfied element was that of domestic injury. *See Elsevier*, 199 F. Supp. 3d. at 784-90.

**C.     Grossmann's Conduct Requires Monetary Sanctions**

Finally, the Court shall address the monetary sanctions that Grossmann has accumulated since the Court's last sanctions order on August 7, 2017, which resulted in a total sanctions award to Elsevier of $24,000.00. (Dkt. #374). That order clearly stated, per the Court's prior sanctions orders, that "Grossmann may not contact Plaintiffs, their counsel, or their employees without the Court's consent" on penalty of $500 for each violative communication. (*Id.*). Since then, Grossmann has continued his flagrant disregard for not only the Court's orders but common notions of decency:

- On August 22, 2017, Elsevier's counsel reported to the Court that counsel received an additional email from Grossmann employing religious epithets and threats on August 15, 2017. (Dkt. #378).

- On September 6, 2017, Elsevier's counsel reported to the Court that Grossman sent eight additional emails to Elsevier's employees, representatives, and/or counsel in violation of the Court's orders during the period of August 25 to September 6. (Dkt. #382).

- On September 14, 2017, Elsevier's counsel reported to the Court that Grossman sent seven additional emails to Elsevier's employees, representatives, and/or counsel in violation of the Court's orders during the period of September 12 to September 14. (Dkt. #383).

- On September 20, 2017, Elsevier's counsel reported to the Court that Grossman sent four additional emails to Elsevier's employees, representatives, and/or counsel in violation of the Court's orders during the period of September 18 to September 20. (Dkt. #389).

These 20 emails result in an additional $10,000.00 in sanctions against Grossmann, bringing his total tab to $34,000.00. Grossmann must pay Elsevier this sum on or before **December 6, 2017**.

## CONCLUSION

Given the foregoing, Elsevier's motion for summary judgment as to the issue of domestic injury is GRANTED. The Clerk of Court is directed to terminate the pending motion at docket number 384.

Because the Court has found that Plaintiffs are entitled to judgment as a matter of law on their civil RICO claim, at least in part, Plaintiffs are likewise entitled to attorneys' fees and costs. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]"). As a result, Plaintiffs are ordered to submit their fee application on or before **December 8, 2017**; Defendant Grossmann may file any submission in opposition to this fee application on or before **December 29, 2017**.

SO ORDERED.

Dated: November 3, 2017
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*
Pierre Grossmann
100 Hilton Avenue
Unit M23
Garden City, NY 11530
eusoupierre@gob2b.in

13