USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 9, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
          :
ELSEVIER INC., ELSEVIER B.V.,  :
ELSEVIER LTD., and ELSEVIER MASSON  :
SAS,          :
          :
          Plaintiffs,  :  12 Civ. 5121 (KPF)
          :
          v.  :  OPINION AND ORDER
          :
PIERRE GROSSMANN, IBIS CORP.,  :
PUBLICAÇÕES TÉCNICAS  :
INTERNACIONAIS, and JOHN DOE  :
Nos. 1-50,  :
          :
          Defendants.  :
          :
------------------------------------------------------- X

KATHERINE POLK FAILLA, District Judge:

     Pending before the Court is a renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, filed by Plaintiffs Elsevier Inc., Elsevier B.V., Elsevier Ltd., and Elsevier Masson SAS (collectively, "Plaintiffs" or "Elsevier") against Defendant Pierre Grossmann. On January 14, 2016, a jury determined that Defendant had violated the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; however, the jury awarded only $11,108 in damages, as opposed to the $31,345 sought by Plaintiffs. Plaintiffs now ask the Court to enter judgment for the full amount of damages, trebled in accordance with Section 1964(e) of RICO, for a total of $94,035, plus pre-judgment interest. In the alternative, Plaintiffs request a new trial under Federal Rule of Civil Procedure 59 solely as to the issue of damages. For the reasons set forth in the

remainder of this Opinion, the motion for judgment as a matter of law is denied, and the motion for a new trial is granted.

## BACKGROUND[1]

This Court's prior decisions provide a thorough review of the relevant facts. *See Elsevier, Inc.* v. *Grossman*, No. 12 Civ. 5121 (KPF), 2013 WL 6331839, at *1-3 (S.D.N.Y. Dec. 5, 2013) ("*Elsevier I*") (granting Plaintiffs leave to amend the complaint); *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 337-41 (S.D.N.Y. 2015) ("*Elsevier II*") (granting in part Defendants' motion to dismiss); *Elsevier, Inc.* v. *Grossman*, 199 F. Supp. 3d 768, 773–78 (S.D.N.Y. 2016) ("*Elsevier III*"), *order corrected*, No. 12 Civ. 5121 (KPF), 2016 WL 7077037 (S.D.N.Y. Dec. 2, 2016); *Elsevier Inc.* v. *Pierre Grossmann, IBIS Corp.*, No. 12 Civ. 5121 (KPF), 2017 WL 5135992, at *1-2 (S.D.N.Y. Nov. 2, 2017) ("*Elsevier IV*") (granting Plaintiffs' motion for summary judgment). As a result, the Court assumes the parties' familiarity with the underlying facts and will discuss those facts only to the extent necessary to resolve the instant motions.

Plaintiffs — publishers of scholarly books and academic journals — brought this action to recover for sales of journals to Defendant that had been improperly made at discounted rates for individual, personal use. *See Elsevier III*, 199 F. Supp. 3d at 774-75. Plaintiffs charge two rates for its journals depending on whether the purchaser is an institution or an individual. *See id.*

---

[1] In addition to the evidence provided by the parties at trial, this Opinion draws on facts contained in Plaintiffs' brief in support of their motion for judgment as a matter of law on the issue of damages ("Pl. Br." (Dkt. #186)), and Plaintiffs' letter renewing that motion ("Pl. Letter" (Dkt. #420)).

Institutions pay full price, while individuals can purchase journals at a discounted rate. *See id.* Defendant and two companies under his control took advantage of this pricing structure and, after purchasing the journals at a discounted rate, resold them to institutions at the higher rate, pocketing the difference while violating Plaintiffs' terms and conditions of sale. *See id.*

**A.     The Evidence at Trial**

The trial against Defendant Grossmann began on January 11, 2016. (Dkt. #196-203).[2] As relevant to the issue of damages, Plaintiffs introduced into evidence "a chart that identified each fraudulent subscription, and explained how [Plaintiffs] matched up the fraudulent order [at the discounted, individual rate] with the Defendant's subsequent re-sale of that subscription to an institutional customer" at the higher price. (Pl. Letter 2). Plaintiffs were able to match some of the subscriptions by cross-referencing a 148-page spreadsheet that had been produced by Defendant during pre-trial discovery. (*Id.*). This spreadsheet included purchase order numbers and invoices from some of the subscriptions purchased by Defendant from Plaintiffs at the individual rate. (Pl. Br. 5). Unfortunately, Defendant did not "produce the vast majority of such records … despite [Plaintiffs'] document requests." (*Id.* at 3).

For those fraudulent subscriptions that could not be cross-referenced with defense documents due to Defendant's pre-trial discovery deficiencies,

---

[2]     On June 29, 2012, Elsevier filed suit against Defendants Pierre Grossman, IBIS Corp., Publicações Técnicas Internacionais, and various "John Doe" Defendants. (Dkt. #1; *see also* Dkt. #33 (first amended complaint)). In June 2017, "Elsevier obtained default judgments against the corporate defendants, and Grossman, proceeding *pro se*, became the lone defendant to proceed to trial." *Elsevier IV*, 2017 WL 5135992, at *1.

3

Plaintiffs attempted to match each individual subscription to an end institutional user through a variety of other means. (Pl. Br. 5). In addition to identifying which individual rate subscription on Plaintiffs' chart corresponded with a subscription that was resold by Defendant at the higher institutional price, the chart also included "the amount of damages attributable to each subscription." (*Id.* at 2).

During the trial, Plaintiffs also presented testimony from multiple witnesses regarding Defendant's fraudulent subscription business. *See Elsevier III*, 199 F. Supp. 3d at 776. "Grossman testified on his own behalf, and claimed that Defendants were falsely accusing him of subscription fraud to run him out of business," but did not present any additional evidence to the jury. *Id.* After a four-day trial, the jury found Defendant liable under Section 1962(c) for conducting or participating in a RICO enterprise through a pattern of racketeering activity. (Dkt. #202). Instead of the full amount of $31,345 sought by Plaintiffs, the jury awarded only $11,108 in damages against Defendant. (*Id.*).

## B. The Post-Trial Litigation

On February 15 and 16, 2016, Plaintiffs filed a number of post-trial motions, including a motion for judgment as a matter of law pursuant to Rule 50 for the full amount of damages or, alternatively, for a new trial pursuant to Rule 59 on the issue of damages. (Pl. Br. 1-3). Before this Court had the opportunity to rule on Plaintiffs' motion, the Supreme Court decided *RJR Nabisco, Inc.* v. *European Cmty.,* — U.S. —, 136 S. Ct. 2090, 2106 (2016),

4

which held that a RICO plaintiff must plead and prove a domestic injury to its business or property to prevail. Because the Supreme Court's decision had issued before judgment in the instant case had been entered, this Court denied Plaintiffs' motion for judgment as a matter of law on the issue of damages, without reaching the merits of the motion. *See Elsevier III*, 199 F. Supp. 3d at 794. Instead, this Court held that due to the intervening change in the law, Plaintiffs — without having established domestic injury — had failed to establish RICO liability. *See id.*

Given the procedural history of the case, the Court granted Plaintiffs the opportunity to make a proffer of evidence establishing domestic injury and Plaintiffs moved for summary judgment on the issue. (Dkt. #384-87). On November 2, 2017, this Court granted Plaintiffs' motion, finding that Plaintiffs had successfully proved domestic injury for 48 of the 51 fraudulent subscriptions. *See Elsevier IV*, 2017 WL 5135992, at *4. Having now established RICO liability, Plaintiffs filed a letter renewing the prior motion for judgment as a matter of law on the issue of RICO damages. (Pl. Letter).

## DISCUSSION

**A.     Applicable Law**

Two principles guide the Court's consideration of Plaintiffs' request for judgment as a matter of law: first, the standard Rule 50(b) imposes for granting such a motion; and second, the Court's ability to increase an award of damages under *Dimick* v. *Schiedt*, 293 U.S. 474 (1935).

5

1. **Rule 50(b)**

"Rule 50 imposes a heavy burden on [a] movant[.]" *Elsevier III*, 199 F. Supp. 3d at 778 (internal quotation mark omitted) (quoting *Cash* v. *Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011)). Rule 50(a) provides that a party can move "for judgment as a matter of law ... at any time before the case is submitted to the jury" on the ground "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the" non-moving party. Fed. R. Civ. P. 50(a). "A party who moved at trial for judgment as a matter of law under Rule 50(a) may file a renewed motion after trial for judgment as a matter of law under Rule 50(b)." *Johnson* v. *Burns*, No. 15 Civ. 4789 (PAE), 2017 WL 1755971, at *4 (S.D.N.Y. May 4, 2017). And Rule 50(b) instructs that "[i]n ruling on the renewed motion, [a] court may: [i] allow judgment on the verdict, if the jury returned a verdict; [ii] order a new trial; or [iii] direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

"A Rule 50 motion may only be granted if 'there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Warren* v. *Pataki*, 823 F.3d 125, 139 (2d Cir. 2016) (quoting *S.E.C.* v. *Ginder*, 752 F.3d 569, 574 (2d Cir. 2014)), *cert. denied sub nom. Brooks* v. *Pataki*, 137 S. Ct. 380 (2016)). "In reviewing a Rule 50 motion, all credibility determinations and reasonable inferences of the jury are given deference and [the court] may not weigh the credibility of witnesses."

6

*Vangas* v. *Montefiore Med. Ctr.*, 823 F.3d 174, 180 (2d Cir. 2016). In turn, "[j]udgment as a matter of law is appropriate 'only if [the court] can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party.'" *Warren*, 823 F.3d at 139 (quoting *Zellner* v. *Summerlin*, 494 F.3d 344, 370-71 (2d Cir. 2007)).

### 2. The *Dimick* Framework

A separate issue is occasioned by Plaintiffs' request to increase the amount of the jury's verdict. Additur is the process by which, if a trial court considers a verdict inadequate, it may condition the denial of plaintiff's motion for a new trial on defendant's consent to the entry of judgment in excess of the verdict. *See Earl* v. *Bouchard Transp. Co.*, 917 F.2d 1320, 1331 (2d Cir. 1990). State courts will use additur to "fix" damages without holding another trial, and may unilaterally increase an award of damages from a jury. *See Liriano* v. *Hobart Corp.*, 170 F.3d 264, 272 (2d Cir. 1999).

In *Dimick*, the Supreme Court — while allowing the use of remittiturs to reduce a jury verdict that is found to be excessive — held that the Seventh Amendment bars the use of additurs in federal court. *See Dimick*, 293 U.S. at 486. Permitting a federal court to increase a damages award unilaterally would erode the "controlling distinction" between court and jury — including the power of the court "to determine the law and [the power of the jury] to determine the facts." *Id.* More than 80 years later, additur is still prohibited in federal courts. *See, e.g., Elyse* v. *Bridgeside Inc.*, 367 F. App'x 266, 267 (2d Cir.

7

2010) (summary order) (finding that the "motion to increase the damages award was properly denied by the district court on the ground that additur is constitutionally impermissible"); *Peebles* v. *Circuit City Stores, Inc.*, No. 01 Civ. 10195 (CSH), 2003 WL 21976402, at *13 (S.D.N.Y. Aug. 19, 2003) ("That alternative remedy [of additur] lies beyond the Court's power."); *cf. Fox* v. *City Univ. of N.Y.*, No. 94 Civ. 4398 (CSH), 1999 WL 33875, at *11 (S.D.N.Y. Jan. 26, 1999) ("It follows that, even in a diversity case presenting only state law claims, a federal trial judge cannot make an order of additur, even though his state court colleague could.").

**B.     Analysis**

Plaintiffs argue that "a fair and reasonable jury, with the correct understanding of RICO liability, could not have arrived at any damages verdict other than for $31,345, the full amount sought by [Plaintiffs.]" (Pl. Br. 16). In order to have awarded only $11,108, Plaintiffs reason, the jury must have misunderstood the legal precept that Defendant was liable for *all* damages caused by the RICO enterprise, not just the damages caused by his personal involvement. (*Id.*). Plaintiffs point to the chart introduced at trial — which delineated the damages of each fraudulent subscription — as proof that, had the jury properly understood the extent of Defendant's liability, "no reasonable juror could have failed to arrive at a damages verdict other than the full amount sought by Elsevier." (*Id.*).

In evaluating Plaintiffs' claim under Rule 50(b), this Court must be careful not to invade the province of the jury. *See Dimick*, 293 U.S. at 486.

8

Simply put, under *Dimick*, this Court does not have the authority to increase the award of damages at Plaintiffs' request. *See id.* Additur is constitutionally impermissible. *See, e.g., Fox*, 1999 WL 33875, at *10-11 (noting that, until the Supreme Court overrules *Dimick*, the case remains good law).

One narrow exception to *Dimick* merits discussion. Several courts have recognized that *Dimick* is not applicable to cases "where the jury has found the underlying liability and there is no genuine issue as to the correct amount of damages." *See, e.g., U.S. E.E.O.C.* v. *Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1252 (11th Cir. 1997). The Second Circuit made note of a modest exception in *Liriano* v. *Hobart Corp.*, 170 F.3d 264, 273 (2d Cir. 1999), and held that, while additur is impermissible, "simply adjust[ing] the jury award to account for a discrete item that manifestly should have been part of the damage calculations and as to whose amount there was no dispute" was permissible. In that instance, the Court increased the damages the jury awarded to the plaintiff in a products liability case "to account for a hospital bill whose amount and nature were not in dispute." *Id* at 272. The Court granted the plaintiff's motion to add $21,252.34 to the total jury award of $1,352,500. *See id.* at 278-79.

This is not a case where Plaintiffs are asking for a discrete adjustment to account for an undisputed amount. Instead, Plaintiffs are asking the Court to triple the amount of damages awarded by the jury. Furthermore, those damages were disputed by Defendant. Although the Court ruled, in resolving an application for sanctions for conduct during discovery, that Defendant could

9

not contest that the allegedly fraudulent subscriptions on Plaintiffs' chart had been sold to institutional end users, Defendant disputed the totality of the allegations against him: "So basically what I'm trying to say, I'm here to tell you, they — it's ridiculous, this accusation against me." (Pl. Br. 10). Because Plaintiffs are not asking for a discrete, undisputed adjustment to the awarded damages, *Dimick* remains applicable to this case.

However, this Court does have the authority to grant Elsevier a new trial under Rule 59(a) solely as to the issue of damages. "The district court is authorized to grant a new trial based on the weight of the evidence only if it determines that the jury's verdict was 'seriously erroneous,' or 'a miscarriage of justice.'" *Elyse*, 367 F. App'x at 268 (quoting *Sorlucco* v. *N.Y.C. Police Dept.*, 971 F.2d 864, 875 (2d Cir. 1992)). When the issues of damages and liability are not "so interwoven that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty," the new trial may be limited to the issue of damages. *Brooks* v. *Brattleboro Mem'l Hosp.*, 958 F.2d 525, 531 (2d Cir. 1992) (quoting *Gasoline Products Co.* v. *Champlin Refining Co.*, 283 U.S. 494, 500 (1931)).

It is quite clear to this Court that the jury's verdict resulted from its desire to have "matching" documents on both sides, documents that were missing from the trial record because of Defendant's misconduct during discovery. As previously mentioned, Plaintiffs introduced at trial a comprehensive chart that identified each fraudulent subscription, along with the amount of damages attributable to each. (Pl. Br. 5). Plaintiffs also

10

matched each fraudulent order, as best they could, with Defendant's subsequent resale of that subscription. (*Id.* at 2). Unfortunately, Defendant did not produce the "vast majority" of documents in his possession that would have aided Plaintiffs in this task. (*Id.* at 3).

Due to Defendant's failure to provide records during discovery, Plaintiffs sought an adverse inference instruction against Defendant. (Pl. Br. 4). The Court declined to impose that relief. (*Id.*). However, the Court is now concerned that, in the absence of such an instruction, the jury misunderstood both its role and the evidence at trial, erroneously awarding only a third of requested damages even as it found liability for the entire course of conduct. Although this Court may grant a new trial "even if there is substantial evidence supporting the jury's verdict," *Manley* v. *AmBase Corp.*, 337 F.3d 237, 244 (2d Cir. 2003), in this case, no evidence supports the jury's finding of damages. Plaintiffs introduced evidence of each subscription, along with the precise corresponding damages at trial. Having found Defendant guilty for violating RICO, the jury's subsequent failure to award full damages was clearly erroneous. Therefore, the Court grants Plaintiffs' motion for a new trial on the issue of damages.

## CONCLUSION

For the reasons above, the Court grants Plaintiffs' motion for a partial new trial solely on the issue of damages, and denies the motion as to judgment as a matter of law on the issue of damages. That said, given the length of time over which this case has transpired, the Court would understand if Plaintiffs

11

wished not to proceed to a retrial. The Court stands ready to set a new trial date if Plaintiffs so desire. Accordingly, Plaintiffs are ORDERED to notify the Court in writing, on or before October 31, 2018, whether they wish to pursue a trial. At that time, Plaintiffs should also indicate if they would be willing to proceed with a bench trial.

    SO ORDERED.

Dated:    October 9, 2018
            New York, New York

                                        KATHERINE POLK FAILLA
                                        United States District Judge

*A copy of this Order was mailed by Chambers to:*

Pierre Grossman
100 Hilton Ave
Unit M23
Garden City, NY 11530