UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
ELSEVIER INC., ELSEVIER B.V.,
ELSEVIER LTD., and ELSEVIER MASSON
SAS,

                               Plaintiffs,            12 Civ. 5121 (KPF)

           v.                   **OPINION AND ORDER**

PIERRE GROSSMANN, IBIS CORP.,
PUBLICAÇÕES TÉCNICAS
INTERNACIONAIS, and JOHN DOE
Nos. 1-50,

                               Defendants.
------------------------------------------------------- X

KATHERINE POLK FAILLA, District Judge:

After seven years of hard-fought litigation, Plaintiffs Elsevier Inc., Elsevier B.V., Elsevier Ltd., and Elsevier Masson SAS (collectively, "Plaintiffs" or "Elsevier") now seek attorney's fees and costs pursuant to the civil remedies provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c). Their motion is granted as set forth in the remainder of this Opinion.

## BACKGROUND

### A. Factual Background

This case was reassigned to the Court in the first month of the undersigned's tenure in this District, and it ranks among the handful of cases on which the Court has spent the most time in the ensuing six years. The Court's involvement has spanned an abortive default judgment application, a

successful motion to dismiss the initial complaint, the filing of an amended complaint, a largely unsuccessful motion to dismiss the amended complaint, the withdrawal of defense counsel, several successful default judgment applications, a protracted period of discovery, a four-day trial, and extensive post-trial motion practice. Scattered among the legitimate factual and legal disputes of the parties have been various efforts by Defendant Pierre Grossmann to distract (if not intimidate) Plaintiffs' counsel and the Court, including scurrilous emails filled with bigoted and hateful references to Plaintiffs and their counsel.

Over the past six years, the Court has issued seven substantive opinions in this case, several of which are lengthy. They include: *Elsevier, Inc.* v. *Grossman*, No. 12 Civ. 5121 (KPF), 2013 WL 6331839 (S.D.N.Y. Dec. 5, 2013) ("*Elsevier I*") (granting Defendants' motion to dismiss, denying Plaintiffs' application for default judgment, and granting Plaintiffs' motion for leave to replead); *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331 (S.D.N.Y. 2015) ("*Elsevier II*") (granting in part and denying in part Defendants' motion to dismiss the amended complaint); *Elsevier, Inc.* v. *Grossman*, 199 F. Supp. 3d 768 (S.D.N.Y. 2016) ("*Elsevier III*") (granting Plaintiffs' motion for final default judgment as to Defendants PTI and IBIS), *order clarified sub nom. Elsevier Inc.* v. *Pierre Grossmann, IBIS Corp.*, No. 12 Civ. 5121 (KPF), 2016 WL 7077037 (S.D.N.Y. Dec. 2, 2016); *Elsevier Inc.* v. *Grossmann*, No. 12 Civ. 5121 (KPF), 2017 WL 1843298 (S.D.N.Y. May 8, 2017) (granting Plaintiffs' motions for new trial and for leave to amend); *Elsevier Inc.* v. *Pierre Grossmann, IBIS Corp.*,

No. 12 Civ. 5121 (KPF), 2017 WL 5135992 (S.D.N.Y. Nov. 2, 2017) ("*Elsevier IV*") (granting Plaintiffs' motion for summary judgment on the issue of domestic injury); *Elsevier Inc.* v. *Grossmann*, No. 12 Civ. 5121 (KPF), 2018 WL 4908105 (S.D.N.Y. Oct. 9, 2018) ("*Elsevier V*") (granting Plaintiffs' motion for new trial on the issue of damages and denying Plaintiffs' motion for judgment as a matter of law as to damages).[1] The Court has issued many times that number of orders, including more than fourteen orders addressing the appropriateness *vel non* of imposing sanctions on Mr. Grossmann for his contumacious conduct. *See, e.g.*, *Elsevier Inc.* v. *Grossmann*, No. 12 Civ. 5121 (KPF), 2017 WL 3393848, at *1 (S.D.N.Y. Aug. 7, 2017) ("This is the thirteenth order the Court has been compelled to issue addressing the propriety and/or imposition of sanctions against Defendant Pierre Grossmann.").

It is not an overstatement to note that the Court and its staff have spent many hundreds, if not several thousands, of hours working on this case and the related interpleader action, *JPMorgan Chase Bank, N.A.* v. *John Wiley & Sons, Inc. et al.*, No. 16 Civ. 4201 (KPF). The Court offers this estimate not to engender approbation or sympathy, but to contextualize the attorney's fees request submitted by Plaintiffs' counsel. In support of this request, Plaintiffs have submitted a declaration from Jason L. Jurkevich, the attorney with principal responsibility for the case for Plaintiffs. (Dkt. #447 ("Jurkevich Decl.")). The Court observes that Mr. Jurkevich's recitation of the procedural

---

[1] Several, but not all, of these decisions have been cited in subsequent decisions and are thus presented with the short form used in those later decisions.

3

history of this case (*see* Jurkevich Decl. ¶¶ 5-53) accords with both the relevant dockets and the Court's own recollection of the case, and the Court therefore incorporates it by reference in this Opinion. Additionally, the Court adopts Mr. Jurkevich's division of the case into six general phases, comprising (i) Plaintiffs' initial complaint and Defendants' initial default (March 2012 through November 2013); (ii) Plaintiffs' amended complaint and Defendants' unsuccessful motion to dismiss (December 2013 through early January 2015); (iii) defense counsel's withdrawal, default judgment on liability as to PTI and IBIS, and pretrial discovery and depositions with Defendant Grossmann (January through October 2015); (iv) pre-trial submissions and trial against Mr. Grossmann (November 2015 through January 14, 2016); (v) post-trial motions and submissions; and (vi) amended pleadings and motion practice on the issue of domestic injury. (*Id.* at ¶ 58).

**B.     Procedural History**

Plaintiffs — publishers of scholarly books and academic journals — brought a civil RICO action against Defendant Grossmann and two companies under his control, PTI and IBIS, to recover for journal sales that had been improperly made at discounted rates for individual and personal use. *See Elsevier III*, 199 F. Supp. 3d at 774-75. After extensive motion practice, default judgments were entered against the corporate Defendants and the case proceeded to trial against Mr. Grossmann alone. After a four-day trial in January 2016, the jury found Mr. Grossmann liable under Section 1962(c) for conducting or participating in a RICO enterprise through a pattern of

4

racketeering activity. (Dkt. #202). Instead of the full amount of $31,345 of damages that had been sought by Plaintiffs, the jury awarded only $11,108 in damages. (*Id.*).

After the trial, Plaintiffs filed a number of post-trial motions, including a motion for judgment as a matter of law pursuant to Rule 50 for the full amount of damages or, alternatively, for a new trial pursuant to Rule 59 on the issue of damages. Before this Court had the opportunity to rule on Plaintiffs' motion, the Supreme Court decided *RJR Nabisco, Inc.* v. *European Cmty.*, — U.S. —, 136 S. Ct. 2090, 2106 (2016), which held that a RICO plaintiff must plead and prove a "domestic injury" to its business or property to prevail. Because the Supreme Court's decision had issued before judgment in the instant case had been entered, this Court denied Plaintiffs' motion for judgment as a matter of law on the issue of damages, without reaching the merits of the motion. *See Elsevier III*, 199 F. Supp. 3d at 794. Instead, this Court held that due to the intervening change in the law, Plaintiffs — without having established domestic injury — had failed to establish RICO liability. *See id.*

The Court granted Plaintiffs the opportunity to make a proffer of evidence establishing domestic injury and Plaintiffs moved for summary judgment on that issue. (Dkt. #384-87). On November 2, 2017, this Court granted Plaintiffs' motion, finding that Plaintiffs had successfully proved domestic injury as to 48 of the 51 fraudulent subscriptions. *See Elsevier IV*, 2017 WL 5135992, at *4. Having now established RICO liability, Plaintiffs filed a letter

renewing the prior motion for judgment as a matter of law on the issue of the appropriate measure of damages under RICO.

Ultimately, the Court found that it was unable to grant Plaintiffs' motion for judgment as a matter of law, but that it could grant Plaintiffs a new trial under Federal Rule of Civil Procedure 59(a) solely as to the issue of damages. *See Elsevier V*, 2018 WL 4908105, at *4. It noted, however, that "given the length of time over which this case has transpired, the Court would understand if Plaintiffs wished not to proceed to a retrial." *Id.* at *5.

By letter dated October 26, 2018, Plaintiffs advised the Court that they did not wish to proceed to retrial, but rather sought a schedule for their motion for attorney's fees and costs. (Dkt. #439; *see also* Dkt. #441 (memo endorsement with briefing schedule)). Plaintiffs filed their motion and supporting documentation on November 16, 2018. (Dkt. #445-47). Defendant Grossmann filed responses that did not specifically challenge the fees and costs sought, but rather offered more broad-based attacks on Plaintiffs and their counsel. (Dkt. #450, 454, 455). Plaintiffs elected not to file a reply brief. (Dkt. #456).

## DISCUSSION

**A. The Court Grants Plaintiffs' Request for Attorney's Fees**

**1. Applicable Law**

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

6

conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) makes it "unlawful for any person to conspire to violate ... the provisions of [subsection (c)]." 18 U.S.C. § 1962(d). "When § 1962 is violated, in addition to criminal penalties, the RICO statutes also authorize civil lawsuits, which, if successful, can entitle a plaintiff to treble damages, costs, and attorney's fees." *DLJ Mortg. Capital, Inc.* v. *Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010) (citing 18 U.S.C. § 1964(c)). In the instant case, all three Defendants are jointly and severally liable for attorney's fees and costs to Plaintiffs — PTI and IBIS because of the default judgments against them, and Mr. Grossman because of the Court's decision on summary judgment in *Elsevier IV*.

In determining the appropriate amount of fees under RICO, a court's analysis is "governed by the same standards which prevail in other types of equally complex Federal litigation." *Hensley* v. *Eckerhart*, 461 U.S. 424, 430 n.4 (1983) (internal quotations and alterations omitted). The Second Circuit has instructed district courts to begin by calculating the "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cty. of Albany* (*"Arbor Hill"*), 522 F.3d 182, 183, 189-90 (2d Cir. 2008); *accord Lilly* v. *City of New York*, No. 17-2823(L)-cv, 2019 WL 3806446, at *4 (2d Cir. Aug. 14, 2019); *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

A district court calculates the presumptively reasonable fee by multiplying the reasonable number of hours that the case requires by the

7

reasonable hourly billing rate. *Millea*, 658 F.3d at 166. The reasonable rate reflects "the rate a paying client would be willing to pay ... bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. In addition, the court must examine the particular hours expended by counsel with a view to the value of the work product to the client's case. *See Lunday* v. *City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994) (per curiam). The court is to exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino* v. *Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

### 2. Counsel's Time Records

A party seeking attorney's fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records. *N.Y. State Ass'n for Retarded Children, Inc.* v. *Carey* ("*Carey*"), 711 F.2d 1136, 1147-48 (2d Cir. 1983); *accord Scott* v. *City of New York*, 643 F.3d 56, 58-59 (2d Cir. 2011). In connection with the instant motion, Plaintiffs' counsel has submitted, among other things: (i) a 22-page affidavit detailing the work performed by the legal professionals who represented Plaintiffs in this matter, as well as their respective backgrounds and rates; (ii) biographical materials for the attorneys and paralegals involved; (iii) detailed billing records covering the entirety of the representation; and (iv) documentation and receipts for the various expenses incurred. (Dkt. #447). None of the Defendants has offered specific objections to the information contained in counsel's submissions.

8

However, the Court has an independent interest in ensuring that it allows recovery only of *reasonable* fees and expenses, and it undertakes that analysis now.

### 3. Calculating Reasonable Attorney's Fees

#### a. Determining the Reasonable Hourly Rate

A reasonable hourly rate represents what "a reasonable, paying client would be willing to pay," and varies by both practice area and location. *Arbor Hill,* 522 F.3d at 184, 192.[2] A court's determination of this rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," and may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Townsend* v. *Benjamin Enter., Inc.,* 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko* v. *Clinton Cty. of N.Y.,* 433 F.3d 204, 209 (2d Cir. 2005)).

Additionally, a court may adjust the hourly rate to account for other case-specific variables, sometimes referred to as "*Johnson* factors," which include:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the customary fee; [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the client or the circumstances; [viii] the amount involved and the results obtained; [ix] the experience, reputation, and

---

[2] The relevant community "is the district in which the court sits." *Farbotko* v. *Clinton Cty. of N.Y.,* 433 F.3d 204, 208 (2d Cir. 2005) (citing *Polk* v. *N.Y. State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir. 1983)).

9

ability of the attorneys; [x] the "undesirability" of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3 (citing *Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard* v. *Bergeron*, 489 U.S. 87 (1989)).

Plaintiffs seek recovery of fees paid to the following legal professionals in the following amounts for the work performed in this case:

| Professional | Title | Years of Experience | Rate | Hours | Amount |
|---|---|---|---|---|---|
| Jason L. Jurkevich | Of Counsel | 24 | $350 | 1,006.1 | $352,135.00 |
| Mark Duckstein | Partner | 32 | $525 | 38.2 | $20,055.00 |
|  |  |  | $585 | 0.6 | $351.00 |
| Mark Olinsky | Partner | 38 | $525 | 3.8 | $1,995.00 |
| Bonnie Schwab | Managing Attorney | 23 | $265 | 3.1 | $821.50 |
| Martha DelGiudice | Managing Clerk | 15+ | $265 | 2.5 | $662.50 |
| Marianne Kehoe | Paralegal | 20+ | $195 | 4.0 | $780.00 |
| Edward Colavito | Paralegal | 22 | $210 | 5.6 | $1,176.00 |
| Magnolia Almonte | Paralegal |  | $195 | 1.6 | $312.00 |
| **Total** |  |  |  |  | **$378,288.00** |

The Court begins by considering the $350 rate charged by the principal attorney in the matter, Mr. Jurkevich. For several reasons, the Court finds that rate to be reasonable. To begin, the rate is a 30 percent discount from Mr. Jurkevich's standard rate, which ranged during the relevant time period from $495 to $550. (Jurkevich Decl. ¶ 54). Given Mr. Jurkevich's education and experience, his discounted rate was considerably below-market. Moreover, the Court observed the care, competence, and professionalism that Mr. Jurkevich brought to his many oral and written submissions in this case, and can attest to the value that he added to the Court's understanding of the case.

10

With respect to the two other attorneys who performed substantive legal work on the case, the Court finds that their respective rates "fall comfortably within the range of fees commonly approved in this District for estimable experienced counsel in complex commercial litigation." *COR, LLC* v. *First Standard Fin. Co. LLC*, No. 17 Civ. 2190 (PAE), 2019 WL 1090480, at *4 (S.D.N.Y. Mar. 8, 2019) (approving discounted rates of $500 per hour for partner and of counsel) (citing *Rubenstein* v. *Advanced Equities, Inc.*, No. 13 Civ. 1502 (PGG), 2015 WL 585561, at *6-7 (S.D.N.Y. Feb. 10, 2015) (finding hourly rate of $525 reasonable for highly experienced partners and $350 "blended" rate reasonable for associates); *Sidley Holding Corp.* v. *Ruderman*, No. 08 Civ. 2513 (WHP) (MHD), 2009 WL 6047187, at *26 (S.D.N.Y. Dec. 30, 2009) (noting that "recent fee awards within the district reflect hourly rates in the range of $450.00 to $600.00 for experienced partners, $350.00 for senior associates, $250.00 for junior associates, and $125.00 to $170.00 for paralegals"), *report and recommendation adopted*, 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010); *In re AOL Time Warner Shareholder Derivative Litig.*, No. 02 Civ. 6302 (CM), 2010 WL 363113, at *13 (S.D.N.Y. Feb. 1, 2010) ("Counsel use hourly rates ranging from $90 to $250 for paralegals, from $175 to $550 for associates and other non-partner level attorneys and from $300 to $850 for partners. These rates, though relatively high, fall within the range of those commanded by leading lawyers in the Southern District, particularly those practicing at large firms or with high profiles."); *see also Tiffany & Co.* v. *Costco Wholesale Corp.*, No. 13 Civ. 1041 (LTS) (DCF), 2019 WL 120765, at *10

(S.D.N.Y. Jan. 7, 2019) ("The Court finds that the hourly rates, ranging from $315-$585 per hour for an associate (depending on experience) to between $625 and $845 per hour for a partner, are reasonable considering the prevailing rates for firms engaging in complex litigation in this district."). The Court notes that Messrs. Duckstein and Olinsky also billed at discounted rates for this litigation. (Jurkevich Decl. ¶ 71). It accepts those rates as reasonable.

Using the guidance provided by the cases cited in the preceding paragraph, the Court accepts the rates charged by paralegals Kehoe and Colavito, both of whom have substantial experience and were used sparingly in this litigation. In contrast, the Court lacks sufficient information concerning paralegal Almonte, and therefore disallows any billings attributed to her.

Finally, the Court turns to the rates of the two managing attorneys, an issue on which there is little guidance in the case law. The Court observes that some courts have distinguished members of the managing attorney's office who have law degrees from those who do not, with the latter group ascribed rates similar to paralegal rates. *See, e.g., Salama* v. *City of New York*, No. 13 Civ. 9006 (PKC), 2015 WL 4111873, at *3 (S.D.N.Y. July 8, 2015) ("Covington also seeks to recover fees at $170-180 per hour for the work of employees of Covington's managing attorney's office. There is no indication of whether these individuals are attorneys, paralegals, law students or otherwise. Accordingly, the Court adjusts their billing rates to reflect that customarily awarded for paralegals."). Here, the original managing attorney, Ms. Schwab, is an attorney of many years' experience, and the Court will accept her rate of $265 as

reasonable. Her replacement, Ms. DelGiudice, has substantial experience but no law degree. The Court will therefore reduce her rate to $200.

### b. Determining the Hours Reasonably Expended

The next step in the Court's analysis is to determine whether the number of hours expended by each of the legal professionals was reasonable. As noted, the Court is admonished to "take[] account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" *Bliven* v. *Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). "In so doing, 'the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" *Id.* (quoting *DiFilippo* v. *Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)); *accord Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012) ("In assessing the reasonableness of attorney's fees, a court looks to the amount of time spent as reflected in contemporaneous time records, and then decides how much of that time was 'reasonably expended.' If the district court finds that some of the time was not reasonably necessary to the outcome of the litigation, it should reduce the time for which compensation is awarded accordingly." (citation omitted)).

In support of their fee application, Plaintiffs' attorneys have submitted the requisite summary of time records "specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148. The Court notes that while counsel are not required to "record in great

detail how each minute of [their] time was expended," and need only "identify the general subject matter of [their] time expenditures," *Hensley*, 461 U.S. at 437 n.12, vague or "block-billed" time records may be insufficient to substantiate a party's claimed expenditure of time, *see Thai-Lao Lignite (Thailand) Co., Ltd.* v. *Gov't of Lao People's Dem. Repub.*, No. 10 Civ. 5256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (collecting cases). Additionally, district courts are authorized, where appropriate, "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'" *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (quoting *Carey*, 711 F.2d at 1146).

In reviewing the billing records for this matter, the Court was struck by the fact that, unlike other fee petitions it has resolved, Plaintiffs' counsel did not block-bill, but rather attributed time to each task. As a result, Plaintiffs (and now the Court) would be able to discern precisely how much time was spent on each task. Additionally, because so much of the work was done by Mr. Jurkevich, the Court was not confronted with issues it has faced in other cases concerning duplication of efforts.

The Court begins by considering those professionals other than Mr. Jurkevich who worked on this matter. It finds, with respect to Messrs. Duckstein and Olinsky, that these individuals were consulted by Mr. Jurkevich sparingly; that their efforts were not duplicative; and that they brought additional insights and experience to the matter that merit separate compensation. Moreover, neither gentleman billed excessively for his

14

consultations with Mr. Jurkevich. The Court accepts all of their hours billed as reasonable.

On the other side of the spectrum are the paralegals, the managing attorney, and the managing clerk. Here, the Court observes that Mr. Jurkevich used these professionals appropriately for more administrative tasks, thereby minimizing the charges to Plaintiffs. And after reviewing these individuals' billings, the Court finds no duplication of effort, no excessive billing, and no wasted time. Again with the exception of paralegal Almonte, about whom the Court has insufficient information, the hours of these individuals are accepted in full as reasonable.

That leaves Mr. Jurkevich. To be sure, the aggregate number of hours billed, 1006.1, is considerable. And yet the Court recognizes that this figure was accumulated over a period of nearly seven years. The Court has also examined each and every one of Mr. Jurkevich's time entries, and finds each to reflect an appropriate amount of time spent for the task described. Perhaps most importantly, the Court acknowledges that a substantial percentage of these hours were occasioned by Defendants' conduct during this litigation — which conduct included several rounds of default judgment applications, wide-ranging discovery abuses by Mr. Grossmann, extensive (if not excessive) motion practice, a four-day trial, and numerous distractions occasioned by Mr. Grossmann's contempt of this Court's orders. (*See generally* Jurkevich Decl. ¶¶ 5-53, 58-68). Put simply, there is no fat to trim from Mr. Jurkevich's application, and the Court will therefore accept all of his hours as reasonable.

15

Finally, the Court's consideration of the *Johnson* factors also counsels in favor of finding counsel's fee application to be reasonable.  The case was filed as a civil RICO action, which on a good day would precipitate difficult legal issues.  Here, however, the ground below the parties and the Court shifted with the issuance of the *RJR Nabisco* decision, which added a domestic injury inquiry that, unfortunately, had not been incorporated into the trial.  The Court shares Mr. Jurkevich's belief that "[t]he Supreme Court had not addressed in its opinion how a plaintiff might prove domestic injury, and this was the first case in the country ... following the Supreme Court's *RJR Nabisco* decision to analyze the domestic injury requirement."  (Jurkevich Decl. ¶ 39). *See Bascunan* v. *Elsaca*, 874 F.3d 806, 820-21 & n.57 (2d Cir. 2017) (citing this Court's decision in *Elsevier III* in concluding that "[w]here the injury is to tangible property, we conclude that, absent some extraordinary circumstance, the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad").

In sum, Plaintiffs' counsel provided high-quality legal assistance on difficult and evolving legal issues, in a case involving evidence largely outside the United States, and against a vexatious individual defendant.[3]  Counsel were generally successful in obtaining the relief they sought for their clients, and in so doing, aided this District and the Second Circuit in developing civil

---

[3]  The Court understands that Defendant Grossmann has filed retaliatory litigation against Plaintiffs in Brazil.  (Jurkevich Decl. ¶ 23 n.1).  The Court is not permitted to award fees for work expended in that case, but the fact that Mr. Grossmann has responded in this fashion confirms the correctness of the Court's reasonableness determinations in this case and its assessment of the *Johnson* factors.

RICO law. And as outlined above, the Court finds both the rates charged and the hours billed to be reasonable, and therefore awards attorney's fees in the amount of $377,813.50.

**B.      The Court Grants Plaintiffs' Request for Costs**

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg* v. *Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted); *see generally Chen* v. *E. Market Rest., Inc.*, No. 13 Civ. 3902 (HBP), 2018 WL 3970894, at *4-5 (S.D.N.Y. Aug. 20, 2018) (discussing compensable costs). Here, Plaintiffs seek $22,161.43,[4] comprising: $350 in court filing fees, $331 in service of process fees, $1,445.56 in duplication charges, $12,461.26 in computerized research costs, $1,066.45 in Federal Express charges, $65.00 in messenger fees, $90.57 in transportation costs, $855.17 in lodging and parking costs during trial, $70.88 in compensable meals, $5,179.77 in transcript fees (many of which were obtained pursuant to directives of the Court on account of Mr. Grossmann's *pro se* status), $44.47 in telephone charges, and $201.30 in PACER fees. The Court has reviewed the substantiation for these charges, and finds them to be both appropriate and reasonable. It therefore awards costs in the full amount of $22,161.43.

---

[4]     In the fee petition, the sum of the allowable costs is mistakenly presented as $21,391.43. (Jurkevich Decl. ¶¶ 80, 83).

17

## CONCLUSION

For the reasons set forth in this Opinion and Order, the Court awards attorney's fees in the amount of $377,813.50 and costs in the amount of $22,161.43. The Clerk of Court is directed to terminate the motion at docket entry 445.

SO ORDERED.

Dated:     August 16, 2019
             New York, New York

                                                KATHERINE POLK FAILLA
                                                United States District Judge

*Sent by First Class Mail to:*
Pierre Grossmann
100 Hilton Ave, Unit M23
Garden City, NY 11530